In the Matter of DONALD A. WRIGHT et al., Appellants, *v.* TOWN BOARD OF TOWN OF CARLTON et al., Respondents.

Fourth Department, April 13, 1973.

*Noonan, Hughes & Mahoney (Stephen B. Hughes* of counsel), for appellants.

*Curtis L. Lyman* for respondents.

CARDAMONE, J.   The Town of Carlton in Orleans County is located on the south shore of Lake Ontario.   It neither has an incorporated village within its boundaries, nor any industry, but it does have many large acreage fruit farms included amongst its 1,937 parcels of taxable property.   More importantly, because of its location on the lake, it contains a proportionately large number of summer cottage owners relative to the permanent population.   During the 14-month period from July, 1970 to September, 1971 the Town Board created a water district pursuant to the provisions of article 12-A of the Town Law whose boundaries included the entire township.

A brief summary of the actions taken by the Town Board follows: On July 20, 1970 Wendell Associates, consulting engineers, were retained to prepare a plan.   On February 4, 1971 a map, plan and report were submitted suggesting that the water district serve the most populated areas of the town.   The benefit method was recommended as being more equitable for charging the costs of the district than by use of assessed valuation. The map reveals 27 miles of water mains (covering about half of the town) directly benefiting 1,006 developed tax parcels of

which 422 are seasonal or summer properties, and 157 directly benefited but unimproved tax parcels, and 774 indirectly benefited tax parcels. A public hearing was held on March 10, 1971 regarding the formation of the water district. Approximately 250 persons attended. Following the hearing the board met and determined that all property and property owners within the proposed district are benefited by it; that it was in the public interest to establish the district; that the report, map and plan as filed be approved; and that the cost of construction be assessed in proportion to the benefit derived by each tax parcel. Thereafter a petition was submitted to the Town Board requesting a referendum which was ordered to be held on April 29, 1971 and at which all duly qualified electors were permitted to vote as well as " owners of taxable real property situate in the proposed district ", in contravention of subdivision 3 of section 209-e of the Town Law which limits the franchise to the latter. The proposition creating the water district was approved — 713 " for " to 586 " against ". Following the referendum, the results were certified to the New York State Department of Audit and Control, and an order was entered by the State Comptroller granting permission to establish the district thereafter ordered created by the Town Board, a certified copy of which was filed with the Department of Audit and Control and the Orleans County Clerk on September 14, 1971.

Appellants instituted this article 78 proceeding to review the actions of the Town Board and to have them rescinded and annulled. Special Term denied the petition in an opinion (70 Misc 2d 1). Appellants have appealed from the judgment entered thereon.

Three issues are raised for our determination: (1) the constitutionality of subdivision 3 of section 209-e of the Town Law; (2) whether the creation of the water district with boundary lines coterminous with the town lines was arbitrary and capricious; and (3) whether a challenge of the method and amounts of the proposed assessments was premature.

Subdivision 3 of section 209-e provides that " When the town board shall determine in the affirmative all of the questions set forth in subdivision one  *  *  *  the board may adopt a resolution approving the establishment  *  *  *  of the district  *  *  *  which resolution shall be subject to a permissive referendum ". Then follows the portion under attack which reads: " The proposition submitted must be approved by the affirmative vote of a majority of the owners of taxable real property situate in the proposed district or proposed extended district

as shown upon the latest completed assessment-roll of the town, voting on such proposition." Under the proposed district in this case, the statute would permit any owner of taxable real property resident in the Town of Carlton to vote. In order for voters who do not own real property to be denied the franchise it must appear that: (1) they were substantially less interested in the outcome of the election than those authorized to vote by the property ownership qualification, and (2) the interest promoted by limiting the franchise constitutes a compelling State interest and the exclusion from the franchise does effectuate this State interest (*Kramer* v. *Union Free School Dist.*, 395 U. S. 621). If those sought to be excluded will be substantially affected by the result of the election (*Phoenix* v. *Kolodziejski*, 399 U. S. 204, 209) the restriction is unconstitutional. Property owners' and nonproperty owners' interests may differ, but both have the same vital concern in the availability of good drinking water, sufficient water to run their homes and businesses and to protect their property from fire. Nonproperty owners of a proposed water district have, prima facie, a substantial interest in the outcome of the proposal (*Police Jury of Parish of Vermilion* v. *Hebert*, 404 U. S. 807 [rural roads]; *Phoenix* v. *Kolodziejski, supra,* p. 209 [public facilities and services]; *Cipriano* v. *City of Houma,* 395 U. S. 701, 705 [water and utilities]). The fact that the improvements voted on may be paid initially through real property taxes does not necessarily effect a reduction in the interest of those who do not own property because they pay increased taxes through increases in rent and the prices of goods and services (*Cipriano* v. *City of Houma, supra,* p. 705). Further, it is not certain that all the funds needed to establish the water district will be derived solely from real property taxes (*Phoenix* v. *Kolodziejski, supra,* p. 209). Surplus moneys of the town not otherwise allocated may be utilized to pay off the maturing bonds (Town Law, § 231), and water rents may legally be used for such purpose (24 Op. St. Comp., 1968, 390). Thus, we conclude that voters who do not own real property are equally, and not less, interested in the outcome of the referendum as those authorized to vote by the property ownership qualification.

As stated, any restriction on the right to vote must be necessary to promote a compelling State interest (*Kramer* v. *Union Free School Dist., supra*; *Atkin* v. *Onondaga County Bd. of Elections,* 30 N Y 2d 401, 404). The general presumption of constitutionality afforded State statutes and classifications if the court can perceive of a " rational basis " for the distinc-

tions made is not applicable to those statutes which deny some resident electors the right to vote (*Kramer* v. *Union Free School Dist., supra*, pp. 627–628). No individual may be denied access to the ballot solely by virtue of his tax status (see *Gordon* v. *Lance*, 403 U. S. 1).

Appellants have failed to demonstrate that: (1) qualified electors who are resident nonowners of property in the Town of Carlton were substantially less interested in the outcome of the election than those authorized to vote by the property ownership qualification portion of subdivision 3 of section 209-e of the Town Law; and (2) appellants have also failed to show that the exclusion of resident nonproperty owners who are electors in the Town of Carlton is necessary to promote any compelling State interest. We must conclude, therefore, that subdivision 3 of section 209-e insofar as it limits the franchise at the referendum to the "owners of taxable real property situate in the proposed district" is unconstitutional.

The recent case of *Salyer Land Co.* v. *Tulare Water Dist.* (410 U. S. 719) is not here controlling. In that case the Supreme Court concluded that the storage district's primary purpose was to provide for farming and not for general public services ordinarily financed by a municipal body. Further, the costs of the district were assessed against the land and were going to be passed on to the farmers' customers in distant metropolitan areas thereby eliminating any claim of direct or indirect economic burdens on the local residents. The Supreme Court concluded that the water storage district, "by reason of its special limited purpose and of the disproportionate effect of its activities on landowners as a group" was the sort of exception to the rule laid down in *Reynolds* v. *Sims* (377 U. S. 533) contemplated in *Hadley* v. *Junior Coll. Dist.* (397 U. S. 50). *Salyer* did not purport to change the guidelines laid down in *Phoenix, Cipriano* and *Kramer*, previously cited in this opinion, and under those guidelines subdivision 3 of section 209-e of the Town Law is unconstitutional.

We turn to the argument raised respecting the creation of this water district whose boundary lines are coterminous with those of the township. The Town Board has the power to create a water district comprising the area it deems benefited, and, since this is a legislative function, the courts should not interfere unless the boundary lines established are "palpably unjust" (*Gaynor* v. *Marohn*, 268 N. Y. 417, 428). "Whether or not a particular parcel has been benefited by a particular improvement is ordinarily a question of fact. The test is not whether as

now used by its present owner any advantage is received but whether its general value has been enhanced " (*Matter of City of New York* [*Juniper Ave.*], 233 N. Y. 387, 392). Unless it can be said as a matter of law that the improvement will not under any circumstances increase the value of the parcels deemed benefited, we must sustain the determination of the Town Board (*Matter of Brewster-Mill Park Realty* v. *Town Bd. of North Elba*, 17 A D 2d 467, 468). The burden is on the appellants to show that their properties were not in fact benefited (*Matter of Nolan* v. *Bureau of Assessors*, 31 N Y 2d 90, 93). While initially the entire water district will not be serviced by the 27 miles of water mains, there is no reason to suppose that service will not eventually be extended throughout the town. Appellants' contention that such future extension is precluded by the town's debt limits is not persuasive because as the debt is paid, new debt could be incurred, and more significantly, such an argument is based on a static tax base while experience shows that the availability of water increases the value of taxable parcels, affording a larger tax base and a higher debt ceiling. Appellants' claim that they should be exempt from inclusion in the water district because they have privately arranged to provide themselves with potable water services is without merit. The existence of wells on appellants' property is not controlling on the issue of "benefit" (*O'Flynn* v. *Village of East Rochester*, 292 N. Y. 156). We find therefore that appellants have failed to show that the creation by the Town Board of Carlton of boundary lines of the water district coterminous with the town lines was an abuse of legislative power and discretion.

Finally, we consider whether the challenge to the methods and amounts of the proposed assessments was premature. Special Term correctly concluded that any attack on the actual amount of the assessment of property within the district is premature. Contrary to appellants' contention, the Town Board is not bound by the suggested[1] assessments as set forth in the Wankel Associates, consulting engineers' proposal. Appellants have misconstrued both the Town Law and the Board's actions. The Town Law permits a town board to adopt an order reciting the proposal including " The proposed method of financing " prior

---

1. *Annual service charge for*:

    (A) 584 directly benefited developed properties (permanently occupied) .......................................... $110.00

    (B) 422 directly benefited developed properties (seasonably occupied) .......................................... $110.00

    (C) 157 directly benefited underdeveloped properties.......... 10.00

    (D) 774 indirectly benefited (not on the water main) properties 1.00

to the holding of a public hearing (Town Law, § 209-d [Notice of hearing]). This order reciting the proposal was adopted by the Town Board at its meeting of February 9, 1971. Its purpose is to inform the public of what the proposal contains and not to bind the Town Board to the actual amount of asssessment contained in it. Practically these will, in the final analysis, depend primarily on the amount of the contracts let for construction of the system and the costs of debt service. Further, the Town Law clearly provides a format for when (§ 236) and how (§ 237) the assessment shall be made, how it shall be published and how it can be challenged (§ 239). The Town Board was bound to act pursuant to these provisions of the statute and did so in this case. The action of the Town Board establishing the water district at its meeting of September 8, 1971, specifying that payments to finance the improvement be made in the first instance from parcels especially benefited, is not an adoption of the assessment charges recited in the consulting engineers' proposal. Rather it represents compliance with section 209-q (subd. 6, par. [c]) of the Town Law which requires that: " such resolution shall contain a statement of the manner in which the costs of the  *  *  * water improvement are to be apportioned ". Insofar as the proposed *amount* of the assessments is challenged, therefore, that challenge is premature.

To the extent that the " benefit method " was adopted rather than the " front-foot " or " assessed valuation " basis for assessment, Special Term incorrectly concluded that an attack on this method of payment was premature. It may be properly challenged at this time (Town Law, § 209-q, subd. 6, par. [e]). The record, as previously related, reveals that this method of financing was contained in the proposal of Wankel Associates, approved by the voters at the public referendum, adopted by the Town Board in its order creating the water district and approved by the State Comptroller by order dated August 31, 1971. The proof does not show that the " benefit method ", a prima facie fair method, was adopted in an arbitrary or capricious manner. Absent such evidence, the benefit method as adopted and approved should be upheld.

The judgment appealed from should be modified only insofar as appellants' challenge to the " benefit method " of assessment was determined to be premature and in all other respects it should be affirmed.

Simons, J. (dissenting). The appellants attack a proposition which established a water improvement district passed by the respondent Town Board and approved by the voters at a refer-

endum. A petition under subdivision 3 of section 209-e of the Town Law was filed, thereby requiring that the proposition be submitted to the referendum for approval by "the affirmative vote of a majority of the owners of taxable real property situate in the proposed district." Contrary to the clear mandate of this statute, the Town Board resolved that not only property owners but all qualified electors of the town were eligible to vote at the election. The proposition was adopted.

The majority of this court has approved the creation of the district in this manner, determining that subdivision 3 of section 209-e of the Town Law unconstitutionally restricts the franchise. I disagree. The statute is constitutional and the Town Board illegally exceeded the powers delegated to it by the State Legislature when it allowed nonproperty owners to vote. Its action should be declared void.

The district created had the limited purpose of obtaining and maintaining the supply of water throughout the town. It had no other function and performed no other service. The estimated cost was $1,600,000 which was to be raised by general obligation bonds of the district to be paid for entirely by assessments against the real property benefited. The cost of maintaining the system was to be paid partly by benefit assessments and partly by use charges. Properties not actually using the service, but declared benefited, nevertheless were required to pay the assessment. Any unpaid debts of the district would be liens upon the realty in the district.

In districts such as this, formed for a special limited purpose and in which a disproportionate effect of the districts' activities fall upon the landowners as a group as opposed to residents *qua* residents, the right to vote may be limited to landowners. (*Salyer Land Co.* v. *Tulare Water Dist.*, 410 U. S. 719; *Associated Enterprises* v. *Toltec Dist.*, 410 U. S. 743.)

Exercising its legislative powers, the Town Board created this district coterminous with the town lines because it assumed that all property in the town was benefited. Those developed properties adjacent to the water main are to be assessed $110 per year for the capital cost and in addition, an estimated charge of $75 per year if they use the water. Fully benefited undeveloped property is to be assessed $10 per year for capital cost. There are 1,163 properties in these two categories. The board also declared that the other 774 properties in the town, those not adjacent to the water main, are indirectly benefited. They are to be assessed only $1 per year. These payments are not real property taxes, as the majority suggests. They are additional

benefit assessments charged against real estate each year to retire the debt. Finally, there are an estimated 750 nonproperty owner residents in the town who were permitted to vote.[1] As property owners within the district these incidentally benefited property owners were entitled to vote on the proposition, and patently the 774 indirectly benefited property owners and the nonproperty owners had an important effect on the outcome of this election in which a total of 1,348 votes were cast, only 713 of them in favor of the proposition. But more pertinently, these voters, property owner and nonowner residents alike, did not live in areas intended to be served by the water main. If the board found the indirect benefit to the property owners not adjacent to the water main was only $1 per year, the benefit or interest of the nonowner resident living in these areas necessarily must have approached nil.

It is argued that residents generally are affected by this improvement even though they are not users themselves (nor are many of them ever likely to be, because they live miles remote from the line). The residents' interest must consist of some financial responsibility and more than a broad general civic interest in fire prevention or such things. In the absence of such involvement, the State may properly limit their participation in the vote and it is unrealistic to say that nonowner residents under these circumstances are affected in a " substantial way ", that their interests are not " disproportionately less " than the property owners in the district who must pay for the improvement. (*Salyer Land Co.* v. *Tulare Water Dist., supra*; and cf. *Phoenix* v. *Kolodzieiski*, 399 U. S. 204, 209–210; *Cipriano* v. *City of Houma*, 395 U. S. 701, 705–706.) These residents have no significant or measurable stake in the project. Their interest in it is not even roughly equivalent to that of the property owners who must bear its cost. Including them in the vote served only to dilute the voting strength of those who did have a substantial interest in the improvement. The limited franchise of the statute had a discernible valid basis. It should not be declared unconstitutional by searching for some illusory interest that is not represented at the ballot box.

If the case involved a problem of representational democracy calling for the election of officeholders to serve a governmental unit in a broad spectrum of public activities, the principle of

---

1. It is claimed, and not denied that residents were qualified as electors up to the day before the election.

*Reynolds* v. *Sims* (377 U. S. 533) most assuredly would apply. But this legislation established a proprietary service, in effect, a public owned company to supply a limited service used and paid for by a limited group.

To the extent that there is some fallout benefit to residents of the town generally, this case is not different from the incidental benefit to nonproperty owners in the flood control and soil conservation project performed by the district in *Associated Enterprises* v. *Toltec Watershed Improvement Dist.* (*supra*). Furthermore, even this limited interest is represented. It is the Town Board, chosen at a general election, which prepares and administers the proposal through its formative stages, determining the size, cost and detail of the district. Indeed, the Town Board may finally establish the district in the absence of a permissive referendum sought by the property owners.

The majority relies upon the rulings stated in *Phoenix* v. *Kolodziejski* (*supra*); *Cipriano* v. *City of Houma* (*supra*) and *Kramer* v. *Union Free School Dist.* (395 U. S. 621). They are distinguishable. *Kramer* relates to school district elections and its facts are not applicable to this case. In *Phoenix* v. *Kolodziejski,* the proposition voted upon sought to finance multiple civic improvements including sewers, playgrounds, a library, a police station and parks. The improvements were to be paid for by general obligation bonds backed by the credit of the municipality and to be retired by the proceeds of property taxes and any other municipal revenues. In *Cipriano* v. *City of Houma,* the legislation sought to authorize extension of a city-owned gas, electric and water utility service to be paid for by revenue bonds backed by the city's general credit. The bonds were retired from use revenues paid by utility customers. In each case, the object contemplated was a multiple public service available to all residents within the city. The financial burden of the improvements fell upon property owners and nonproperty owners alike and their interests in the improvements were not substantially different. In this case, quite the opposite is true. The property owner is solely responsible for the cost of building the project and for its fiscal integrity.

Courts should not lightly upset legislative acts. In *Salyer Land Co.* v. *Tulare Water Dist.* (*supra,* p. 725) the court quoted with approval from *Williams* v. *Rhodes* (393 U. S. 23, 30):

" ' In determining whether or not a state law violates the Equal Protection Clause, we must consider the facts and circumstances behind the law, the interests which the State claims to be protect-

ing, and the interests of those who are disadvantaged by the classification.' ''

Subdivision 3 of section 209-e of the Town Law contains a valid voting restriction in favor of property owners who pay for the improvement as opposed to those whose only connection with it is that they happen to reside within the district. The economic burden of the improvement cannot fall upon them as residents and unless they are property owners they are affected minimally, if at all, by the project's development. The Legislature has not infringed on any Federal constitutional right of equal protection when it declared that in cases such as this, if there is an objection to the Town Board's plan, a majority of the taxable landowners must willingly assume the financial burden before the enterprise may be undertaken.

GOLDMAN, P. J., MARSH and HENRY, JJ., concur with CARDAMONE, J.; SIMONS, J., dissents and votes to reverse the judgment and grant the petition in an opinion.

Judgment modified on the law and facts in accordance with opinion by CARDAMONE, J., and as so modified affirmed, without costs.