John J. Callahan, J.
Petitioners, in the nature of an article 78 proceeding, seek to set aside the results of a special election conducted in the Town of West Seneca, New York, on January 14, 1976. That election was held to determine the voters’ wishes regarding construction of a swimming pool complex with 50% State aid for the project. The election resulted in an affirmative approval of the project by the townspeople.
Petitioners contend that the special election of January 14, 1976 was technically improper in that the election should have been held no earlier than December 10 and no later than December 20, 1975. Further, they allege that the posting and publication of a notice of a special election should have been accomplished on or before November 20, 1975. Stated simply, they contend that the special election was a permissive referendum to determine the voters’ approval or disapproval of a bonding resolution of the Town Board of the Town of West Seneca, dated November 10, 1975, which authorized the financing (under Local Finance Law procedures) of the swimming pool project. The petitioners urge that since the special election concerned the bonding resolution of November 10, 1975, that the time of the election, publishing and posting procedures are governed by article VII of the Town Law (§§ 90-94). It is asserted that these procedures were not timely followed, hence the result of the referendum (January 14, 1976) is a nullity. In addition, the manner of conducting the election is challenged as is the procedure for determining a qualified elector.
The Town of West Seneca has denied the allegations that the election of January 14, 1976 was a permissive referendum on the bonding resolution of November 10, 1975. It contends *324 that the special election was for the submission of a proposition under article VI of the Town Law. The town also urges that article VI of the Town Law governs posting and publication procedures herein and the setting of the date of a special election. There was publication and posting pursuant to and in conformity with section 82 of the Town Law, 10 days prior to the election of January 14, 1976.
The town also denies there were any irregularities or fraud in the actual conduct of the special election. Additionally as a defense, the town board asserts that the petitioners are not entitled to relief pursuant to CPLR article 4, and that petitioners have failed to allege a specific violation of their rights. The town also contends that the Local Finance Law governs the conduct of a bonding referendum.
Addressing the question of petitioners’ standing to initiate this suit and as well, the alleged failure of petitioners to establish a specific violation of their rights, the court finds that the petitioners do have standing. While there is no specific showing of damages to the petitioners themselves or a specific violation of their rights, it is inconceivable that there can be no court review of a special election where there are allegations affecting the integrity of legal procedures in the expenditures of public funds and in the conduct of special election for that purpose. Public policy considerations dictate that the instant case be subject to court review. (See Broidrick v Lindsay, 78 Misc 2d 933; Matter of Russell v Harwood, 20 Misc 2d 692.)
The bonding resolution for the pool was adopted by the town board on November 10, 1975 and erroneously stated that a mandatory referendum was required thereon by the Local Finance Law. Actually, a permissive referendum is permitted by section 35.00 of the Local Finance Law, if a petition is filed requesting one, pursuant to article VII of the Town Law, or the town board on its own motion decided to hold one. The court notes that no referendum was required or necessary on this pool issue. By its voluntary act and without compulsion by petition the town board may direct submission of an issue to the town electorate (Town Law, § 94).
No petition was in fact filed with the town requesting a permissive referendum pursuant to section 91 of the Town Law. The town board on its own motion adopted a second resolution on November 10, 1975 to submit the pool issue to the voters. That resolution set forth January 14, 1976 as the *325 date for the referendum on the bonding resolution. The court finds that the town board did submit the bonding resolution to a referendum.
There is no dispute that there was extensive newspaper and media publicity which attended this issue. Section 82 of the Town Law under which the Town of West Seneca posted and published is practically identical to section 90 of the Town Law except that the latter requires posting and publishing 10 days after the adoption of the resolution and the former requires posting and publishing 10 days before the special election. In effect, they are alternative publishing and posting mechanisms.
The ultimate purpose of the procedures provided in the applicable sections is to accord the electorate the right to express its approval or disapproval of a proposal at an election whether the object thereof is or is not subject to permissive referendum.
The petitioners allege noncompliance with the use of personal registration procedures for the referendum on January 14, 1976. They have alleged no fraud nor proven any fraud on the part of electors casting ballots, nor have they disputed the town clerk’s determination that only six ballots cast were questionable from the point of elector qualification. Pure conjecture and supposition are no basis for setting aside the election. Personal registration is not mandated for town elections. Subdivision 2 of section 84 of Town Law provides that the town board may use personal registration of voters for a town election — clearly permissive language. There is no requirement that a town elector be registered or enrolled to vote in a town election on a bond resolution. (23 Opns St Comp, 1967, p 608.) The town complied with section 150 of the Election Law as to the qualification of each elector. The court notes that subdivision 1 of section 84 as it pertains to property ownership of electors has previously been declared unconstitutional. (Matter of Cohalan, 71 Misc 2d 196, affd sub nom. Matter of Cohalan v Olmo, 41 AD2d 840.)
The law therefore permits voluntary submission of a proposal to the electorate and eliminates the compulsory submission directed upon the filing of a petition therefor with the town clerk. Failure to dot every "i” and cross every "t” in a procedure voluntarily submitted does not render the result void. A town board is not bound to await compulsion or court order. It has acted in good faith and within the best interest of *326 its citizens. To avoid a permissive voluntary submission on mere technicality would only delay the project, deny the community a needed improvement and add to its cost.
It is the finding of this court that the special election held on January 14, 1976 was a referendum on the bond resolution of November 10, 1975 and that the town properly complied with the necessary procedures in the conduct of that election. Further, the court determines that the results of said special referendum to be valid.
Accordingly the petition is in all respects dismissed.