HON. JOHN C. MANNIX County Attorney, Warren County
We acknowledge receipt of your letter inquiring about voter qualifications at a referendum for the establishment of a county sewer district and also the voter qualifications at referenda for the establishment of sewer districts in towns. You point out that there are apparent differences in voter qualifications and you inquire about the differences.
County Law § 257 provides that, for the county referendum, electors who are resident within the area included in the proposed county sewer district may vote.
In our opinion, in order to vote at a referendum for the establishment of a county sewer district, a person must be a registered voter living at and who is shown on the registry of voters as residing at an address within the proposed district. A copy of a previous informal opinion to this same effect, published in 1969 Op. Atty. Gen. 57, is enclosed for your information.
Voter qualifications at a referendum to establish or extend a town sewer district are set forth in Town Law 1 § 209-e, subdivision 3, as follows:
 "* * * The proposition submitted must be approved by the affirmative vote of a majority of the owners of taxable real property situate in the proposed district or proposed extended district as shown upon the latest completed assessment-roll of the town, voting on such proposition. * * *"
These qualifications are, indeed, substantially different from those applying to the county referendum. However, restricting the franchise to owners of real property has been held invalid by Court decision in Matterof Wright, et al. v. Town Board of the Town of Carlton, et al.,41 A.D.2d 290, aff'd. 33 N.Y.2d 977 (1973), in which the Court determined that Town Law § 209-e, subdivision 3, was unconstitutional "insofar as it limited the franchise at the referendum to the `owners of taxable real property situate in the proposed district'". The Court also required that registered voters from the area involved, even though they might not own real property in the area, had to be allowed to vote.
In our opinion, the qualifications to vote at a referendum to establish a town sewer district are those specified in Town Law § 209-e, subdivision 3, i.e., ownership of real property, overlaid with the additional requirement set down by the Court that registered voters living at and shown on the registry of voters as residing at an address within the area involved may also vote even though they might not own real property in the area. An informal opinion of this office to the same effect, dated July 30, 1976, addressed to Anthony C. Bucca, is enclosed herewith for your examination.
Because these differences in voter qualifications exist, there may be confusion and misunderstandings if the referenda for the county and the towns are held at the same time and in the same place. Quite obviously, separate ballots must be prepared, both of which would be used by most voters but only one of which could be used by the remainder of the voters. The proportion of voters who could use only one ballot will be greater in towns in which there are a considerable number of owners of resort homes who live elsewhere and in towns in which there are a substantial number of tenants occupying rental property. Another factor to consider is that the county referendum might be defeated but one or more of the town referenda may be passed, or vice versa. Such differing results might make the whole program unfeasible and inoperable. This may lead to a decision to hold the county referendum first and, if it is approved, to hold the town referenda thereafter. Total cost may have a bearing upon such a decision. The town referenda may not be unduly expensive: we enclose herewith a copy of an opinion of this office reported in 1957 Op. Atty. Gen. [Inf.] 58, and a copy of an opinion by the Comptroller reported in 19 Compt. 211, to the effect that at a special town election, a town need not necessarily provide the same number of polling places which are required at a general election.