In the Matter of JOHN ESLER et al., Respondents, v CARL J. WALTERS, as Supervisor of the Town of Guilderland, et al., Appellants.

Third Department, November 5, 1981

**APPEARANCES OF COUNSEL**

*Tabner, Carlson, Daffner & Farrell (John W. Tabner* of counsel), for appellants.

*Hoffman & Stockholm (Jeffrey E. Stockholm* of counsel), for respondents.

**OPINION OF THE COURT**

MIKOLL, J.

On June 10, 1980, the Town Board of the Town of Guilderland passed a resolution calling for a public hearing concerning the consolidation of the Westmere and McKownville Water Districts pursuant to subdivision 7 of section 206 of the Town Law. A hearing was held on July 8, 1980, and the town board adopted a resolution establishing the consolidation of the two water districts. On August 27, 1980, a special election on the question was submitted to

public vote of owners of taxable property situated within the districts as assessed upon the last preceding town assessment role pursuant to subdivision 7 of section 206 of the Town Law. The two water districts were financed pursuant to provisions of the Town Law. Both were financed by ad valorem taxes upon real property situated within the districts and water rents. If either was unpaid, the debt became a lien on the realty.

Petitioners are residents of the affected districts. They were declared ineligible to vote in the instant election because they were not property owners within the districts. Petitioners sought an invalidation of the election on the ground that they had been unconstitutionally denied their right to vote. Special Term declared subdivision 7 of section 206 of the Town Law unconstitutional and prohibited respondents from taking any further actions to consolidate the two districts based on the special election held on August 27, 1980 upon authority of *Matter of Wright v Town Bd. of Town of Carlton* (41 AD2d 290, affd 33 NY2d 977). It is clear that the *Wright* decision cannot be differentiated factually from the instant matter. Both cases involved the creation of new water districts and, in both, the applicable State statutes required submission of the question for vote solely to property owners in the districts. In the *Wright* case, the Fourth Department declared subdivision 3 of section 209-e of the Town Law unconstitutional, departing in its holding from the contrary decision of the United States Supreme Court in *Salyer Land Co. v Tulare Water Dist.* (410 US 719). The court held that the *Salyer* case was inapposite and should be limited to its narrow facts. The court further stated that property owners and nonproperty owners were equally interested in the matter of public water supply, and there existed no compelling State reason to limit the franchise based on property ownership *(Matter of Wright v Town Bd. of Town of Carlton,* 41 AD2d 290, 293-294, affd 33 NY2d 977, *supra)*.

If the *Wright* case left unclear the applicability of the correct standard in deciding whether a limited franchise was permissible, the question was unmistakably resolved by *Ball v James* (451 US 355). There, the United States Supreme Court approved of a limited franchise appor-

tioned to landowners according to the amount of land they owned. The stipulated facts in the *Ball* case disclose that the water district had vast governmental powers including the right to condemn land, to sell tax-exempt bonds and to levy taxes on real property. The district also sold electricity to one half of the State's population and had influence on flood control and environmental management. The Ninth Circuit Court of Appeals had held that the one-person-one-vote principle applied and differentiated the district from the more sparsely populated and largely agricultural one involved in the *Salyer* case *(James v Ball,* 613 F2d 180). It found that the *Salyer* decision dealt with a water district which merely stored and delivered water for agriculture and had no other general public purpose. The Ninth Circuit opined that the substantial factual difference in its case justified a dissimilar result than that reached in the *Salyer* case. In *Ball,* the district was the major supplier of electric power in Arizona and 40% of its water went not to the association's agricultural members but to urban areas of the State. All these facts led the Ninth Circuit to the conclusion that the water district did not serve the sort of special, narrow purpose approved in *Salyer* in limiting the voting franchise. Of significance to the court was the fact that though the district's obligation bonds were secured by liens on land owned by the association's members, the bonds had been paid out of revenue bonds which were junior to the general obligation bonds of the members. It found, too, that the cost of running the water district did not fall primarily on voting landowners.

The Supreme Court noted with approval the tests applied by the Ninth Circuit in deciding whether the principle of one-person-one-vote applied, that is, was the purpose of the water district sufficiently specialized and narrow and did its activities bear on landowners so disproportionately as to distinguish the district from public entities whose more general governmental functions demand application of the one-person-one-vote rule. Nonetheless, the Supreme Court came to the opposite conclusion and held that the one-person-one-vote principle did not apply *(Ball v James,* 451 US 355, 371, *supra).*

Acknowledging that the district in *Ball* was much more extensive and diverse than that in *Salyer* (410 US 719, *supra)*, the Supreme Court nevertheless found that the differences did not amount to a constitutional difference. The court concluded that the district did not exercise the governmental powers referred to in *Reynolds v Sims* (377 US 533) requiring the one-person-one-vote rule..The court stated that the fundamental purpose of the district was simply to store water, to conserve it from loss, and to deliver it according to land ownership, and that it had no control over the use to which the water was put by landowners. The existence and size of the district's huge electric business was found to be inconsequential in its effect on the legality of the voting scheme. Finally, the court reasoned that the voting scheme was constitutional because it bore a reasonable relationship to its statutory objective *(Ball v James,* 451 US 355, 366-371, *supra)*.

We are thus confronted by a conflict between the decision of the New York Court of Appeals in the *Wright* case and decisions of the United States Supreme Court in the *Salyer* and *Ball* cases affecting the principle of one-person-one-vote. A decision of the Supreme Court is binding upon the courts of this State so far as it determines a Federal question. At issue in the instant matter is the application of the due process clause of the Constitution (US Const, 14th Amdt, § 1), clearly a Federal question. We are, therefore, constrained to follow the applicable decisions of the Supreme Court relating to due process (1 Carmody-Wait 2d, NY Prac, § 2:70, pp 83-84).

The *Salyer* and *Ball* cases are binding in the instant matter. Initially, the two-prong test referred to in *Salyer* and *Ball* must be applied in deciding whether an exception to the one-person-one-vote rule exists. We note parenthetically that such a test was not utilized in *Wright*. Applying the test here, we are of the opinion that the issue submitted for vote is one which is far removed from normal governmental activities. The districts' sole power involves the distribution of water. They exercise no control over its use. It is the Town Board of the Town of Guilderland (of which the water districts are a part) which is the governing

political body of the water districts (see Town Law, arts 12, 12-A, 12-C) and which makes all the governmental decisions relating to the two districts.

The second prong of the test, measuring the effect of the water districts on property owners, was refined by the Supreme Court in *Ball v James* (451 US 355, 371, *supra)* wherein it was stated: "The *Salyer* opinion did not say that the selected class of voters [property owners] for a special public entity [water district] must be the only parties at all affected by the operations of the entity, or that their entire economic well-being must depend on that entity. Rather, the question was whether the effect of the entity's operations on them was disproportionately greater than the effect on those seeking the vote".

In the instant case, the costs of the water districts are assessed against property owners in proportion to the value of the land they own and liens are imposed upon such lands for nonpayment of assessments. Clearly, the effect of the water districts' activities on property owners is disproportionately greater than on nonproperty owners.

We, therefore, conclude that the principle of one-person-one-vote is inapplicable. Having reached this decision, we hold also that there is a rational basis for the restricted franchise here imposed because of the more permanent and enduring interests of property owners in the water districts.

The judgment should be reversed, on the law, without costs, and the petition dismissed.

HERLIHY, J. (dissenting). In our opinion, this court is bound by the Court of Appeals decision in *Matter of Wright v Town Bd. of Town of Carlton* (41 AD2d 290, affd 33 NY2d 977) which considered the *Salyer* decision *(Salyer Land Co. v Tulare Water Dist.,* 410 US 719) mentioned by the majority. The *Ball* case *(Ball v James,* 451 US 355), also mentioned by the majority, does not, in our opinion, mandate that this court override the *Wright* decision.

The judgment should be affirmed.

SWEENEY, J. P., and MAIN, J., concur with MIKOLL, J.; WEISS and HERLIHY, JJ., dissent and vote to affirm in an opinion by HERLIHY, J.

Judgment reversed, on the law, without costs, and petition dismissed.