*309 OPINION OF THE COURT
Wachtler, J.
On this appeal we are asked to consider the constitutionality of a statute (Town Law, § 206, subd 7) which provides that in special elections on propositions to consolidate water districts, no person shall be entitled to vote unless he or she is an elector of the town and also “is the owner of taxable property situate within one of the districts”. The trial court found the statute unconstitutional, but the Appellate Division reversed. The petitioners appeal claiming that the real property ownership requirement violates the equal protection guarantees of the State and Federal Constitutions as well as certain sections of the State Constitution specifically relating to the right to vote (NY Const, art I, § 1; art II, § 1).
In July of 1980 the Town Board of the Town of Guilderland adopted, after a hearing, a resolution consolidating two water districts, known as the McKownville and Westmere Water Districts. The resolution provides that the consolidated water districts shall be financed “on an ad Valorum basis” as well as by the imposition of water rents. The resolution also states that it is subject to a permissive referendum.
A valid petition for a referendum was submitted to the town clerk and accordingly an election was scheduled for August 27, 1980. The public notice of the election states: “No person is entitled to vote at said election unless he or she: (a) Is an elector of said Town of Guilderland, and (b) Is the owner of property assessed upon the last preceding Town Assessment Roll and situated within the said McKownville Water District and/or said Westmere Water District”. This statement concerning voter qualifications for this type of special election is based upon and accords with subdivision 7 of section 206 of the Town Law.[1] At the special election a majority of those voting approved the proposed consolidation.
*310 In September this proceeding was commenced by three town residents who do not own real property in the township and thus were not entitled to vote in the special election. Two of the petitioners, Esler and Smith, were turned away at the polls; the other petitioner, Gaffney, made no attempt to vote because he was “aware of the public notice concerning [voter] qualifications”. They claimed that as a result of the land ownership requirement the election was “performed in an unconstitutional manner, in violation of the petitioners’ equal protection guarantees and effected the disenfranchisement of the petitioners in violation of the Constitution of this State and of the United States”. They asked that the election be annulled and that an order be issued declaring subdivision 7 of section 206 of the Town Law unconstitutional.
The trial court agreed with the petitioners, relying primarily on Matter of Wright v Town Bd. of Town of Carlton (41 AD2d 290, affd 33 NY2d 977), in which a comparable section of the Town Law was held to be unconstitutional when measured against the guidelines enunciated in certain United States Supreme Court decisions.
The Appellate Division reversed and dismissed the petition. The court found that the Supreme Court’s recent decision in Ball v James (451 US 355), upholding a land ownership requirement for voters in a water district election, was dispositive with respect to the petitioners’ right to vote under the Federal Constitution. It did not address, and thus presumably found no merit to, the petitioners’ State constitutional contentions.
The equal protection guarantee of the Fourteenth Amendment applies to the right to vote and generally places a heavy burden on the State to justify any departure from the “one-man, one-vote” principle (e.g., Reynolds v Sims, 377 US 533). However, in Salyer Land Co. v Tulare Water Dist. (410 US 719) the Supreme Court recognized a narrow exception to that requirement when the election relates to a governmental body which performs a special limited function having a disproportionate effect on a definable segment of the community. In such a case, the court held that a statute limiting the right to vote to a specified group would be sustained unless the basis for the *311 limitation was “ ‘wholly irrelevant to achievement of the regulation’s objectives’ ” (Salyer Land Co. v Tulare Water Dist., supra, at p 730), the minimal equal protection requirement.
Applying those principles in the Salyer case the court found no constitutional impediment in legislation permitting only landowners to vote in elections for directors of a particular water district, and also providing that the votes be weighted according to the assessed valuation of the voter’s land. The court emphasized (at pp 728-729) that the district had “relatively limited” governmental powers, its primary purpose being “to provide for the acquisition, storage, and distribution of water for farming in the Tulare Lake Basin. It provides no other general public services”. The court also noted (at p 729) that the water district’s actions “disproportionately affect landowners” who alone bear the costs of district projects and services assessed in proportion to the benefits received, which would become a lien against the land in the case of delinquency.[2]
Subsequently in Matter of Wright v Town Bd. of Town of Carlton (41 AD2d 290, supra) the Appellate Division held the Salyer exception inapplicable to a statute imposing a land ownership requirement for voters in a special election to create a town water district (Town Law, § 209-e, subd 3). The court noted that in Salyer (at p 294) “The Supreme Court concluded that the storage district’s primary purpose was to provide for farming and not for general public services ordinarily financed by a municipal body.” Thus applying the more demanding standards applicable to elections generally the Appellate Division found the statute unconstitutional because the State had failed to demonstrate that residents who do not own land were substantially less interested in the outcome of the election and that the statutory restriction on the right to vote served a compelling State interest. When that case was appealed to this court we affirmed on the opinion at the Appellate Division (33 NY2d 977, supra).
*312 The Supreme Court’s latest decision in this area now indicates that the exception recognized in Salyer is broader than it was perceived to be when the Wright case was decided. In Ball v James (451 US 355, supra), involving the Salt River District in Arizona, the court again found no equal protection violation in a statutory scheme which limited voting eligibility in a directors’ election to landowners and apportioned voting power according to the amount of land a voter owns. Although the district was a major generator of hydroelectric power supplying virtually half of the State and delivered approximately 40% of its water to urban areas for nonagricultural purposes, the court held (at pp 367-368) that the “constitutionally relevant fact is that all water delivered by the Salt River District, like the water delivered by the Tulare Lake Basin District, is distributed according to land ownership, and the District does not and cannot control the use to which the landowners who are entitled to the water choose to put it.” Thus, noting that the district’s primary and originating function was simply to store and deliver water to landowners who were the only residents subject to liens, taxes and other costs of the district, the court held (at p 357) that “the peculiarly narrow function of this local governmental body and the special relationship of one class of citizens [landowners] to that body releases it from the strict demands of the one-person, one-vote principle of the * * * Fourteenth Amendment”.
' The role of the consolidated water district in the case now before us is similarly limited to the storage and delivery of water to landowners throughout the district. It does not exercise general governmental authority or provide general public services such as housing, transportation, schools or fire and police protection (see, e.g., Salyer Land Co. v Tulare Water Dist., supra, at pp 728-729). In short the water district is a supplier of water owned and operated by the town, and thus possessing some of the attributes of a governmental entity, but having no greater governmental powers than those possessed by the water districts involved in the- Salyer and Ball cases.
With respect to the effect of the water district’s activities, the petitioners note that both landowners and tenants *313 share a common interest in the availability of public water facilities and that the costs of the district, directly imposed on landowners will also be passed along to tenants through increased rents. These factors were found persuasive in the Wright case but it is now clear from the Supreme Court’s decision in the Ball case that the question is not whether those entitled to vote are the only ones affected by the operations of this type of special public entity, but whether the effect on them is disproportionately greater than on those claiming an equal right to vote (Ball v James, supra, at p 371).
In the case now before us it is conceded that the costs of the consolidation and the district’s subsequent operation are not assessed against all residents, but only against landowners whose property alone is subject to assessments and charges for the benefits conferred, and is also subject to liens for delinquencies. This special burden was found to demonstrate a disproportionate effect on resident landowners, as opposed to other residents, in the Salyer and Ball cases and must be given the same weight in the present case.
Thus in an election to consolidate two water districts within a town, the Legislature could limit the franchise to a select group of voters because of the limited purpose of the district and the disporportionate effect of its activities on one segment of the population. In addition, it cannot be said that the Legislature acted irrationally or inequitably by providing, as it did in subdivision 7 of section 206 of the Town Law, that only those residents who own real property within the districts are eligible to vote on the consolidation since only their property would be permanently subject to the resulting costs.
The only remaining question then is whether the statute violates the State Constitution. In certain areas, of course, the State Constitution affords the individual greater rights than those provided by its Federal counterpart. We have noted, however, that the wording of the State constitutional equal protection clause (NY Const, art I, § ll)[3] “is no *314 more broad in coverage than its Federal prototype” and that the history of this provision shows that it was adopted to make it clear that this State, like the Federal Government, is affirmatively committed to equal protection, and was not prompted by any perceived inadequacy in the Supreme Court’s delineation of the right (Dorsey v Stuyves - ant Town Corp., 299 NY 512, 530-531). In election matters we have simply observed that the State guarantee of equal protection “is as broad in its coverage as that of the Fourteenth Amendment” (Seaman v Fedourich, 16 NY2d 94, 102).
Limiting voter eligibility in water district elections to landowning residents does not violate those sections of the State Constitution specifically dealing with voter rights. The guarantee that “[n]o member of this state shall be disfranchised * * * unless by the law of the land, or the judgment of his peers” (NY Const, art I, § 1) does not by its terms create an independent right to vote but simply insures that whatever voting rights an individual possesses may not be taken away or diminished except under certain extraordinary circumstances. The section of the Constitution setting forth qualifications for voters in this State (NY Const, art II, § 1) makes no reference to land ownership, but that does not preclude the Legislature from imposing such a requirement in water district elections because it has long been “the established policy of this state * * * to limit the right of suffrage” in such elections to resident landowners (Spitzer v Village of Fulton, 172 NY 285, 290; cf. Johnson v City of New York, 274 NY 411, 419; Matter of Blaikie v Power, 13 NY2d 134, 140).
In conclusion it should be emphasized that this court, like the Federal courts, has consistently held that the equal protection guarantee forbids the State from imposing land ownership as a prerequisite to vote in general elections or to hold public office (Landes v Town of North Hempstead, 20 NY2d 417). But limiting voter eligibility to landowning residents in certain types of special elections, including those dealing with the creation of water districts, does not violate the public policy of this State embodied in the State Constitution. In this respect the demands of the *315 State and Federal Constitutions are consistent which, in our view, is a desirable result in an area involving such a fundamental right as the right to vote.
Accordingly, the order of the Appellate Division should be affirmed.

. The relevant portion of the statute provides: “No person shall be entitled to vote upon any such proposition unless he or she has the following qualifications: (a) is an elector of the town, and (b) is the owner of taxable property situate within one of the districts assessed upon the last preceding town assessment roll”.

. In a companion case {Associated Enterprises v Toltec Dist., 410 US 743), the court also upheld a statute imposing a land ownership requirement in a referendum concerning the creation of a water district.

. (Art I, § 11 states: “No person shall be denied the equal protection of the laws of this state or any subdivision thereof”.)