OPINION OF THE COURT
John S. Lockman, J.
Petitioners, in a proceeding pursuant to CPLR article 78, seek to set aside the result of a referendum conducted in the Town of Oyster Bay on August 21, 1990. The referendum was held to determine whether voters supported an extension of the Sanitation Collection District of the Town of Oyster Bay to a circumscribed area in the hamlet of East Norwich. The referendum resulted in approval of the extension by a majority of those who voted.
Petitioners, who are property owners in East Norwich, challenge the referendum and underlying proceedings upon several grounds. They contend that the resolution fixing the public hearing was not in compliance with article 12-A of the Town Law which governs the extension of improvement districts. They contend that the order adopting the resolution and directing a public hearing omitted certain required information, that the order was not published with the notice of hearing as required, and that subsequently the boundaries of the proposed extension were altered, thus requiring a new hearing. Petitioners further contend that the referendum itself was unlawful because the town permitted registered voters who were not owners of taxable real property to vote in contravention of Town Law § 209-e (3). They also contend that *239 certain property owners were unlawfully prevented from voting because they were not citizens, and that absentee ballots were permitted without legislative authorization for same. Petitioners finally complain of procedural irregularities in identifying those who did vote. Based upon the foregoing petitioners argue that the referendum and underlying proceedings ought to be annulled.
A cursory summary of the events leading to this proceeding is necessary for examination of the proposed grounds for annulment. Initially the town adopted a resolution concerning extension of the Town of Oyster Bay Sanitation Collection District to encompass a delineated area within East Norwich on January 23, 1990. The town published a notice of hearing, omitting a copy of the resolution, but issuing an informational flier through the Chamber of Commerce. A well attended public hearing was held on April 23, 1990, and petitioners were present. Subsequently, the town adopted a resolution approving the extension and directing a referendum. A proper notice was published, and 70% of the registered voters appeared to vote on August 21, 1990. The resolution was voted upon separately by the residents of East Norwich East and East Norwich West, and extension was approved by a majority of the votes cast.
The law concerning special elections for improvement districts is not without seeming conflict. The controlling statutes are subject to less apparent conflict than the case law, but nevertheless offer an amalgam of cross references and mandatory directives coupled with permissive ones. For example, the extension of an improvement district shall be based upon a map, plan and report in such detail as the town determines. The map, plan and report shall be filed in the office of the Town Clerk (Town Law § 209-c). Here the town created a map and properly filed same with the Town Clerk.
The statute also provides that subsequent to the map filing, the Town Board may adopt an order and enter same in its minutes, reciting information regarding the map filing, the date, place and time of public hearing, and the maximum amount to be expended (Town Law § 209-c). Here the town did not fully comply, but apparently was not required to based upon the Legislature’s use of the word "may” rather than "shall”. However, the statute does direct that a copy of the order "shall” be published and posted (Town Law § 209-d), and the town concededly did not do so. There is no question that the subject election or referendum concerned an improvement *240 district within the definition of section 209-a, and that the provisions of article 12-A were applicable (Town Law § 209).
Notwithstanding the foregoing, the critical directive of the statute concerning the subject referendum is that provided by Town Law § 209-e (3) which states in relevant part, "The proposition submitted must be approved by the affirmative vote of a majority of the owners of taxable real property situate in the * * * proposed extended district as shown upon the latest completed assessment-roll of the town, voting on such proposition.” Whether ownership of taxable real property is a requirement for voting in a special election is the controlling issue. Resolution requires annulment of the referendum result.
Respondent contends that compliance with Town Law § 209-e (3) was not required based upon Matter of Wright v Town Bd. (41 AD2d 290, 294, affd 33 NY2d 977). There the Appellate Division held that "subdivision 3 of section 209-e insofar as it limits the franchise at the referendum to the 'owners of taxable real property situate in the proposed district’ is unconstitutional.” Thus respondent contends that it is not required to comply with a constitutionally invalid statutory requirement.
Petitioners respond that the continuing validity of Wright (supra) has been undermined by the more recent Court of Appeals decision in Matter of Esler v Walters (56 NY2d 306). The Esler decision indicated that the Court of Appeals, when deciding the Wright case, gave too narrow a construction to a United States Supreme Court case titled Salyer Land Co. v Tulare Water Dist. (410 US 719). The Court of Appeals held in Esler, based upon a later United States Supreme Court decision in Ball v James (451 US 355), that a statute restricting the franchise to landowners was not unconstitutional when the effect upon landowners is disproportionately greater than on nonlandowners. A disproportionate effect or special burden is present when "the costs of * * * [the project under referendum] are not assessed against all residents, but only against landowners whose property alone is subject to assessments and charges for the benefits conferred, and is also subject to liens for delinquencies” (Matter of Esler v Walters, supra, at 313). The Esler decision leaves no room for doubt that under the facts and circumstances presented in this case, restriction of the franchise to landowners would pass constitutional muster. Thus the statutory restriction was applicable, and the votes cast by nonlandowners contaminated the elec *241 tian result, making it impossible to determine whether a majority of those properly entitled to vote approved the proposition.
Petitioners also contend that certain landowners were not permitted to vote because they were not citizens, and that this restriction was unlawful. However, restriction of the franchise to the owners of taxable real property does not operate to extend the franchise. Noncitizens may not vote in contravention of Election Law § 5-102 (1), which provides that no person "shall be qualified to * * * vote at any election unless he is a citizen of the United States and is or will be, on the day of such election, eighteen years of age or over, and a resident of this state and of the county, city or village for a minimum of thirty days next preceding such election.” While other procedural requirements applicable to general elections are not strictly required for special town elections (see, Matter of Ecker v Town of W. Seneca, 87 Misc 2d 322, 325 [voters in town elections need not be registered]; Election Law § 1-102 [Election Law does not govern the conduct of town elections deciding any ballot question submitted to its voters unless submitted at the time of a general election]; Town Law § 83 [special town elections shall be conducted in the manner prescribed by election law "so far as practicable”]), respondent has indicated no authority dispensing with age or citizenship requirements. Accordingly, noncitizens were properly excluded, even though landowners.
As the court has concluded that electors who were not authorized by statute to vote where unlawfully permitted to do so, resolution of the remaining issues is unnecessary. However, it appears that none is sufficient to require invalidation. The only mandatory direction which the town failed to follow was that directing that a copy of the resolution/order directing a public hearing be posted and published with the notice of hearing. No prejudice is claimed from this minor deviation, and it appears that the information contained in the resolution was made public by other means. With regard to the petitioners’ allegation that respondent altered the district or failed to identify the boundaries, neither contention is supported by the record. A map of the hamlet of East Norwich was filed with the proposed extension detailed and circumscribed. No additions or deletions were made, although for voting purposes the proposed area was divided into east and west.
Finally, the court notes that strict compliance with the *242 Election Law is not required for a local special election not held at the time of a general election (Election Law § 1-102). However some method of properly identifying voters should be instituted where registration is not required, and signatures cannot be matched to election "buff” cards. As petitioners have not indicated any fraudulent practice in the case at bar, the failure to obtain the signatures of several of the voters would not constitute grounds for annulment.
Based upon the foregoing opinion, the application for an annulment of the referendum and underlying proceedings is granted.