Requestor: Robert J. Leader, Esq., Town Attorney Town of Gouverneur P.O. Box 13 Gouverneur, New York 13642-0013
Written by: James D. Cole, Assistant Attorney General in Charge of Opinions
You have asked whether only the owners of taxable real property situated in a proposed sewer district are eligible to vote in a referendum on the creation of the sewer district.
Under section 209-e(3) of the Town Law, a resolution by a town board to establish or extend an improvement district is subject to a permissive referendum.
 "The proposition submitted must be approved by the affirmative vote of a majority of the owners of taxable real property situate in the proposed district or proposed extended district as shown upon the latest completed assessment-roll of the town, voting on such proposition."
While this provision is clear on its face, you are requesting an opinion in light of a prior opinion of this office finding that such a real property ownership requirement is not permissible. 1977 Op Atty Gen (Inf) 81.
The 1977 opinion of this office was based on the decision of the Court of Appeals in Matter of Wright v Town Board of Town of Carlton, 41 A.D.2d 290
(4th Dept 1973), affd, 33 N.Y.2d 977. The Wright decision, however, was subsequently overruled by the Court of Appeals in Matter of Esler vWalters, 56 N.Y.2d 306 (1982). Thus, our 1977 opinion is no longer valid.
In Wright, section 209-e(3) of the Town Law was also in issue. That provision was found to be unconstitutional. In Esler, however, the Court of Appeals examined a decision of the United States Supreme Court (Ball vJames, 451 U.S. 355) and overruled Wright in reviewing a comparable provision of the Town Law requiring property ownership as a condition to vote on a proposition to consolidate water districts. In Esler, the Court reasoned:
 "In Ball v James (451 U.S. 355, supra), involving the Salt River District in Arizona, the court again found no equal protection violation in a statutory scheme which limited voting eligibility in a directors' election to landowners and apportioned voting power according to the amount of land a voter owns. Although the district was a major generator of hydroelectric power supplying virtually half of the State and delivered approximately 40% of its water to urban areas for nonagricultural purposes, the court held (at pp 367-368) that the `constitutionally relevant fact is that all water delivered by the Salt River District, like the water delivered by the Tulare Lake Basin District, is distributed according to land ownership, and the District does not and cannot control the use to which the landowners who are entitled to the water choose to put it.' Thus, noting that the district's primary and originating function was simply to store and deliver water to landowners who were the only residents subject to liens, taxes and other costs of the district, the court held (at p 357) that `the peculiarly narrow function of this local governmental body and the special relationship of one class of citizens [landowners] to that body releases it from the strict demands of the one-person, one-vote principle of the . . . Fourteenth Amendment'.
* * *
 "With respect to the effect of the water district's activities, the petitioners note that both landowners and tenants share a common interest in the availability of public water facilities and that the costs of the district, directly imposed on landowners will also be passed along to tenants through increased rents. These factors were found persuasive in the Wright case but it is now clear from the Supreme Court's decision in the Ball case that the question is not whether those entitled to vote are the only ones affected by the operations of this type of special public entity, but whether the effect on them is disproportionately greater than on those claiming an equal right to vote (Ball v James, supra, at p 371).
 "In the case now before us it is conceded that the costs of the consolidation and the district's subsequent operation are not assessed against all residents, but only against landowners whose property alone is subject to assessments and charges for the benefits conferred, and is also subject to liens for delinquencies. This special burden was found to demonstrate a disproportionate effect on resident landowners, as opposed to other residents, in the Salyer and Ball cases and must be given the same weight in the present case." Esler v Walters, supra, pp 312-313.
In Esler, the Court also found that the required property ownership would not violate State constitutional protections.
We conclude that the requirement of real property ownership in order to vote in a referendum to establish an improvement district under article 12-A of the Town Law is consistent with Federal and State constitutional requirements.*
The Attorney General renders formal opinions only to officers and departments of the State government. This perforce is an informal and unofficial expression of the views of this office.
* Under article 12-A of the Town Law, the cost of establishing or extending improvement districts is wholly the expense of property owners included in the district. This factor was emphasized by the Court of Appeals in Matter of Esler, in upholding the constitutionality of the real property ownership requirement.