out of the general rule, very special words are required, and accordingly a residuary bequest of property 'not specifically given,' following various specific and general legacies, will include lapsed specific legacies." Jarman on Wills, p. 762.

I conclude that the disposition sought to be made of the testator's property under paragraph 4 of his will is void, and that all of such property passed to his heirs and next of kin as unbequeathed assets, and therefore that the decree appealed from should be affirmed, with costs.

ROBSON, J., concurs.

---

## In re SHAFFER.

(Supreme Court, Appellate Division, Second Department.　April 22, 1910.)

1. MUNICIPAL CORPORATIONS (§ 497*)—ASSESSMENT—REVIEW—LOCAL IMPROVEMENTS.

Where an assessment for a local sewer improvement does not need confirmation by a court, the matter resting solely in the discretion of a board of assessors, the courts will not interfere in the absence of fraud or want of some essential element in the scheme of taxation, simply because the tax may seem unnecessary or unjust.

[Ed. Note.—For other cases, see Muncipal Corporations, Cent. Dig. §§ 1167, 1168; Dec. Dig. § 497.*]

2. MUNICIPAL CORPORATIONS (§ 506*)—ASSESSMENT—COURT REVIEW—"SUBSTANTIAL ERROR."

The determination of the board of assessors that an entire sewer system should be taken as a whole, and that the lateral connecting sewers or enlarged or changed sewers along any line should be included in the entire cost, and paid for by the territory deemed benefited, being a matter committed to their exclusive judgment, even if the court should consider another method more equitable, would not amount to a "substantial error" in the proceedings giving a right to a reduction of the assessment under Greater New York City Charter, Laws 1901, c. 466, § 959, giving such right where the cost of a local improvement has been unlawfully increased by a "substantial error."

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1177; Dec. Dig. § 506.*]

3. MUNICIPAL CORPORATIONS (§ 497*)—ASSESSMENT—COURT REVIEW—SCOPE.

The question upon an application made under Greater New York City Charter, Laws 1901, c. 466, § 959, providing that, in any proceedings relative to an assessment for local improvements, if any substantial error shall be alleged to have been committed resulting in the unlawful increase of cost of the improvement, the party aggrieved thereby may apply to the Supreme Court for a reduction of the assessment, is not whether the petitioner has any remedy for his alleged grievances, but whether he has that particular affirmative remedy.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 497.*]

4. MUNICIPAL CORPORATIONS (§ 497*)—ASSESSMENT—EXCESSIVE INTEREST.

That interest charges included in the cost of a local improvement were excessive and illegal would not justify the court in interfering with the assessment.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 497.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Special Term, Kings County.

Application by Jacob H. Shaffer to reduce or modify an assessment of taxes. From an order denying the application, he appeals. Affirmed.

The following is the opinion of Kelly, J., at Special Term: ,

The petitioner, a property owner on Sixteenth street in the former town of Flatbush, now in the borough of Brooklyn, makes application under the provisions of section 959 of the Greater New York City Charter (Laws 1901, c. 466) for an order reducing the assessment imposed upon his property in this matter by the board of assessors and affirmed by the board of revision of assessments. He avers that the assessment has been increased by reason of substantial error in the proceedings of the assessors; the alleged error consisting chiefly in the inclusion by the board in the cost of the sewer of certain items of expenditure for connecting or lateral sewers at points distant from the property of the petitioner.

The sewer which is the subject of the assessment is said to be one of the largest improvements of its kind ever undertaken. It drains practically the entire territory of the old town of Flatbush, as well as parts of the former city of Brooklyn and towns of Flatlands and New Utrecht. It is approximately five or six miles in length, beginning at or near the old line dividing Brooklyn and Flatbush, near Montgomery street, and running diagonally across Flatbush and the border line between New Utrecht and Brooklyn, emptying into New York Bay at Sixty-Fourth street. The total cost of the improvement to the city was $3,384,108.97.

In apportioning the expense on the property benefited in proportion to the amount of the benefit, as required by section 434 of the charter, the board of assessors laid out a benefit district comprising over five square miles of territory. Within the bounds of the benefit district were various cemeteries, Prospect Park, and the Parade Grounds, all of which were included by the board in the assessment, with the practical result that nearly $500,000 of the assessment is paid by the city. The balance due was assessed upon the private property in the district which the board of assessors deemed benefited and in proportion to the amount of benefit deemed by the board to have been received. The action of the board of assessors was deliberate, after hearing the objections of property owners, the reasons actuating them are set forth in their proceedings, and their action has been confirmed by the board of revision. In apportioning the assessment, they divided the benefits received from the improvement into two classes—direct and indirect. Where property fronted on a street in which a new sewer was constructed, whether the main trunk sewer, or a lateral or connecting sewer leading into the trunk sewer, the assessors put such property in the class of property directly benefited and imposed an assessment of $3.38 per foot. In some streets where old sewers had previously been laid and new ones substituted, they made an allowance of $1 per foot, for the old line, making the direct charge in such streets $2.38 per foot. The balance of the cost of the improvement, not raised by assessment for direct benefit, was assessed on the remaining property to the district at the uniform rate of $1.90 per 100 square feet.

The district assessed, which the assessors deemed benefited, comprised, as has been suggested, some five square miles of territory. It extended all the way down to New York Bay. And in considering the cost of the improvement, the assessors included not only the expense of building the main trunk sewer, but also the cost of constructing new lateral sewers or replacing old sewers deemed by them to be inadequate, not only in Flatbush in the neighborhood of the petitioner's property, but all the way to tide water. They regarded the whole construction, trunk sewer and lateral branches, as one vast undertaking, and all the remaining property in the district was assessed for this indirect benefit. Thus the cost of constructing new lateral sewers or replacing old lateral sewers, in the northeast part of Flatbush, and the cost of like construction at the westerly end of the sewer in Bay Ridge or New Utrecht, was all included. The property owner in Flatbush, at the northeast end of the improvement, bore his pro rata of the cost of the lateral con-

struction at the southwest end, and vice versa; the property owner within the improvement district in Bay Ridge at the southwest end bore his pro rata of the entire cost.

It is upon the last method of apportioning the cost of the improvement that the petitioner bases his most strenuous complaint of substantial error. He says that his property in Flatbush is in no way benefited by the construction of lateral sewers in Bay Ridge. He avers that, in many instances, the property in Flatbush was supplied with what, he says, were adequate sewer facilities before the installation of this new system. He was satisfied with the old condition. He objects to the assessment for direct benefit at a uniform rate. He says the old sewer in front of his property was sufficient for him if it still remains, or, if it has been altered or enlarged, he objects to paying an assessment for direct benefit at the same rate as a man whose property fronts on the large trunk sewer. He wants the assessment for direct benefit proportioned to the diameter of the sewer. There may be other criticisms on the detail by which the board of assessors reached their final conclusion. I have carefully examined the exhaustive and able brief submitted by the learned counsel for the petitioner, and the cases cited by them, but I am forced to the conclusion that, in this proceeding, the court cannot grant him relief.

The matter of collecting the expense incurred in making an improvement of this kind, the determination of what property shall bear the expense, and the details of apportioning the assessment are acts legislative in character. This is not an assessment which needs confirmation by a court, it is an improvement determined upon and originating with the municipal authorities, without any action by the courts—a matter of legislative policy resting altogether in the discretion of a co-ordinate branch of the government, a policy which the courts cannot legitimately question where it is not inconsistent with the fundamental law of the state. When the purpose for which a tax is demanded is not a public purpose, where there is fraud or extravagance, or where some essential element in the scheme of taxation is wanting, the court will interfere to protect the citizen; but simply because a tax may seem unnecessary or even unjust to the judicial mind constitutes no reason for interference by the courts. The distinction between the two branches of government must be constantly kept in mind. The courts are not a cure-all for the mistakes or bad judgment of elective officials. The remedy is with the people to elect other officials, not by destroying the limitations between the powers of the different branches of government.

In this case the petitioner does not attempt to question the judgment of the board of assessors in laying out the assessment district. Suppose he did —suppose he honestly thought that, instead of five square miles bearing the expense of this sewer, a larger area should be included, and suppose a judge might think that an enterprise of this magnitude might well be charged upon the city at large—could the judicial branch of the government interfere? One-half of the cost of depressing the steam railroad tracks on Atlantic avenue was placed by the Legislature on the whole city of Brooklyn, and yet the citizen in lower Fulton street might well wonder how he was benefited. A part of the cost of the removal of grade crossings of steam railroads through the towns of Flatbush and New Utrecht is charged upon the owners of real estate in Greenpoint; the cost of widening Livingston street was (until remedied by the Legislature) assessed upon real estate which apparently derived no benefit from the improvement; and yet all these matters were for the legislative branch of government to decide. Localities may look at these things from too narrow a point of view. The board of assessors represents the entire city, looks at matters from the broader view point. "They assess upon their own knowledge and after inspection of the property, and in the nature of things that knowledge and judgment could not be produced before an appellate tribunal in such manner as to enable a legal review thereof." People ex rel. Davidson v. Gilon, 126 N. Y. 147, 27 N. E. 282. Where assessments for benefit must be collected from the property benefited, the tax is not always restricted to the very district concerned. There are cases where the character of the improvement is such that there may be differences of opinion as to the propriety or justice of its being provided for by a small

district or a large one. "In no part of the law of taxation has the practice of our state governments left the discretion of the Legislature more entirely unfettered than in laying and apportioning such assessments, and the case must be most extraordinary and clearly exceptional to warrant any court in declaring that the discretion has been abused and the legislative authority exceeded." Cooley on Taxation (2d Ed.) p. 145. One of the requisites of taxation is the laying down of a rule by which to measure the contribution which each of the subjects selected for taxation shall make. This rule only the legislative power of the state is competent to prescribe, and apportionment thereof is always an act of legislation. Id. p. 237. It is conceded that the legislative judgment that a certain district is, or will be, so far specially benefited by an improvement as to justify a special assessment, is conclusive, and that its determination as to what shall be the basis of the assessment is equally conclusive. To invoke the intervention of a court for relief against such conclusions is to invoke the judicial authority to give its judgment controlling effect over that of the Legislature in a matter of the apportionment of a tax which, by concession on all sides, is purely a matter of legislation. This is inadmissable in any case where the legislative action is not manifestly colorable and arbitrary. Id. p. 661.

The argument of the learned counsel for the petitioner proceeds upon the theory that the property owner already had adequate sewer facilities. But what does "adequate" mean? He cannot separate himself from the community in which he lives. In this particular case, the petitioner had adequate facilities because he deposited his sewage in Jamaica Bay, to the damage of his fellow citizens upon and contiguous to that body of water. He had adequate facilities because other parts of the town of Flatbush were left undrained and impassable in time of storm, the sewer adequate to the petitioner was not adequate to the public need, or to the demands of public health laws and drainage and sanitary improvements which transform entire localities. Every lot could not have its own private sewer to tide water, using the public streets. It would be impracticable, and particularly because the individual lot owner could not bear the expense. A comprehensive scheme must be instituted caring for the entire territory. Who is to supervise this? Not the individual, not the locality, but the officials elected by the community to do these things. If they do them honestly, the fact that there may be a difference of opinion as to whether they used good judgment or not does not justify the courts in interfering. One objection urged by the petitioner here emphasizes the fact that the individual does not always look at matters from the public standpoint. A considerable item of expense in the sewer was caused by the construction of the embankment by which grade crossings of steam railroads were removed in the towns of Flatbush and New Utrecht at the joint expense of the city and the railroad companies under the supervision of the "Grade Crossing Commission" appointed by act of the Legislature. The immediate benefit from this removal of grade crossings would appear to be to the petitioner's locality, and yet he urges in his brief that the extra expense in the sewer construction caused by this public work should be charged "upon the Grade Crossing Commission." I think the determination of the board of assessors, affirmed by the board of revision, that this entire undertaking from one end to the other should be taken as a whole, and that the lateral connecting sewers, or the enlarged or changed sewers along the entire line, should be included in the entire cost and paid for by the territory deemed benefited, was a matter committed to their judgment exclusively, and that even if the court thought the method of apportionment suggested by the petitioner was more equitable, or if the court itself could devise what it considered was a better plan, still there is no warrant for interfering under the provisions of section 959 of the charter, on the ground that the assessment has been increased by the "substantial error" mentioned in the statute.

Indeed, as there is no charge of fraud and no claim that the assessment as a whole exceeds the fair value or fair cost of the improvement, it would appear that the court is deprived of power to interfere by the express terms of the statute. The question upon an application made under section 959 of the charter is not whether the petitioner has any remedy for his alleged grievances, but whether he has that particular affirmative remedy, and this

has apparently been determined against the petitioner's claim by several controlling adjudications. Matter of N. Y. C. & H. R. R. R. Co., 49 App. Div. 281, 63 N. Y. Supp. 52, affirmed without opinion 163 N. Y. 604, 57 N. E. 1119, appeal dismissed 186 U. S. 269, 22 Sup. Ct. 916, 46 L. Ed. 1158; Matter of Smith, 99 N. Y. 424, 2 N. E. 52; Matter of Wheelock, 51 Hun, 640, 3 N. Y. Supp. 890, affirmed 121 N. Y. 664, 24 N. E. 380; Matter of Munn, 165 N. Y. 149, 58 N. E. 881.

The objection to the inclusion of the expense of the lateral sewers as a part of the entire undertaking is the main objection urged by the petitioner. In addition, it is claimed that interest charges included in the cost of the improvement are excessive and illegal. But this question has also been decided against the petitioner's contention. It is not claimed that the share imposed upon the petitioner's property was exaggerated, or that under the system of public improvement imposed by law upon the property owners in the city of New York it could be admeasured in any better way or one more just to the petitioner or to the public. The financial machinery, the complications, and the vast expense of conducting municipal undertakings have to be all considered, and this subject has been thoroughly discussed in reported cases and decided adversely to the petitioner. Matter of Tappan, 54 Barb. 225; Matter of Pelton, 85 N. Y. 651; Matter of Lowden, 89 N. Y. 548; In re Home for Incurables, 166 N. Y. 602, 59 N. E. 1123. And under the decision in Re N. Y. C. & H. R. R. R. Co., supra, an excessive charge for interest would not justify the court in interfering with the assessment.

Interference with assessments imposed by the constituted authorities, when there is no charge of fraud or extravagance, can only be justified when the petitioner shows a clear case of illegality. That is not shown here. To reduce the petitioner's assessment will be to increase the assessment of some one else. The petitioner says this is no concern of the court, that the court should not consider the fact that the property owners in Bay Ridge on the shores of New York Bay have been assessed for lateral sewers in Flatbush, or that to relieve the petitioner's locality of the assessment would put additional charges on these Bay Ridge citizens who are not complaining about their enforced contribution to this great public improvement. I can only say that this argument shows the wisdom of confiding these matters of great public works to some general authority which can look at the rights of all the people interested rather than a particular locality.

The application must be denied.

Benjamin N. Cardozo and Alexander McKenney, for appellant. George L. Sterling, Asst. Corp. Counsel, for respondent.

PER CURIAM.    Order affirmed, with $10 costs and disbursements, upon the opinion of Mr. Justice Kelly, at Special Term.

---

PATTERSON et al. v. GUARDIAN TRUST CO. OF NEW YORK.

(Supreme Court, Special Term, Broome County.    May 6, 1910.)

1. PLEADING (§ 8*)—COMPLAINT—CONCLUSIONS.

Where the complaint in an action by bondholders secured by a trust mortgage against the trustee does not allege the fact constituting the elements of fraud, the averment that the acts of the trustee complained of were done in fraud of the rights of the bondholders is a mere conclusion, and does not state a cause of action for fraud.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. § 28½; Dec. Dig. § 8;* Fraud, Cent. Dig. § 37.]