later defaults the owner cannot counterclaim against the amount due at the time of filing the lien; the default being subsequent to such time. The amount to which the lien may attach may be increased after the time of filing, but it can never become less than the amount due at such time. Anisansel v. Coggeshall, 83 App. Div. 491, 82 N. Y. Supp. 430; Foshay v. Robinson, 137 N. Y. 134 [32 N. E. 1041]." Ray on Mechanics' Liens, p. 334.

The cases cited sustain the quotation, and I think the principle applies to this case.

[3] 2. Furthermore, I think the evidence shows that, at the time of the transaction which the trial court has found to be an abandonment, the owners recognized the plaintiff's claim and promised to pay it. While it is true that the contractor refused to proceed with the work, that refusal was based upon his lack of means, as he stated, although at that time a large amount had been earned by him under the contract and was being withheld, and unjustly so, as I think. But, notwithstanding such refusal, he did proceed with the work thereafter, upon the promise of the owners, as the plaintiff contends, to pay the amount of the pay roll each week of the contractor and his men, and pay the outstanding bills, including that of the plaintiff. I think the testimony of the contractor and the architect supports this contention. Flynn admits paying the other bills, but disputes the fact that he agreed to pay the plaintiff's bill. He says he did not know about it; but the evidence shows, and the finding is to the effect, that he had actual notice of the plaintiff's lien on or about the 30th day of July, 1912, which was nearly a month before this transaction.

I think the findings should be modified, by striking out the finding of an abandonment, and in lieu thereof a finding should be made substantially in accordance with plaintiff's contention, as before stated. The judgment should be modified, by declaring that the plaintiff has a valid lien for the full amount of its claim and interest. The other provisions of the judgment should be made to conform with such modification, and, as so modified, the judgment should be affirmed, with costs to the appellant against the respondent owners.

Order entered nunc pro tunc as of date of argument, May 19, 1915; the defendant Jerry Flynn having died since the argument. All concur; ROBSON and FOOTE, JJ., only upon the first ground stated in the opinion.

---

In re BALDWIN STREET IN CITY OF ROCHESTER. (No. 291-44.)

(Supreme Court, Appellate Division, Fourth Department. July 7, 1915.)

MUNICIPAL CORPORATIONS ☞495—PUBLIC IMPROVEMENTS—ASSESSMENT OF
    BENEFITS—COURT REVIEW.

The Rochester City Charter (Laws 1907, c. 755) vested the legislative power of the city in its common council, with power to require improvements, including the paving of public streets, and by section 112 authorized the council to apportion the expense of any public improvement upon the property deemed benefited thereby, and that the cost of any improvement to be assessed upon the property involved shall be determined by the comptroller, who shall report the aggregate amount as to each street to the assessors; and section 191 requires the assessors to assess all lands

within the part to be assessed, apportioning the expense according to the benefit received; and section 203 provides that, on allegation of fraud or substantial error, whereby the assessment exceeds the amount which ought to have been lawfully levied, any party aggrieved may petition the Supreme Court to have it vacated or reduced. *Held*, on application to reduce or vacate an assessment on the ground that it was erroneous, because including only one tier of lots on each of the streets improved, and not including property upon main intersecting thoroughfares, and on the ground that the benefits were not in proportion to the assessments, that the determination of the benefits and the apportionment of the expense was a legislative function of the common council, the assessors, etc., over which the courts had no right of review.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1166; Dec. Dig. &#9756;495.]

Appeals from Special Term, Monroe County.·

In the matter of the assessment for the asphalt improvement of Baldwin Street and of four other streets in the City of Rochester. From each of five orders, on applications therefor, setting aside the assessments for asphalt pavements in such streets, there were separate appeals. Order in each case reversed, and findings in each instance inconsistent herewith disapproved, and new findings ordered in accordance with the scheme of local assessment as finally adopted by the common council, and applications to set aside assessments denied.

Argued before KRUSE, P. J., and ROBSON, FOOTE, LAMBERT, and MERRELL, JJ.

W. W. Webb, Corp. Counsel, of Rochester (Charles L. Pierce, of Rochester, of counsel), for appellant.

Ednor A. Marsh, of Rochester, for respondents.

MERRELL, J. The orders appealed from were granted in special proceedings taken under section 203 of the charter of the city of Rochester, upon the petitions of certain property owners upon Baldwin street, Chamberlain street, Stout street, Denver street, and Greeley street, in the Eighteenth ward of said city, praying that the assessments for asphalt improvements upon said streets made by the board of assessors of said city be vacated and set aside, by reason of the fact that the territory upon which the expense of the said improvement was placed was too narrowly restricted, and that the expense should have been assessed against a greater amount of property than that of the abutting owners upon said improved streets. Said petitioners also complain of said assessment, that the same was not uniform, and not in accordance with the benefits to the property assessed. The five appeals taken are based upon substantially the same facts, and involve the same questions of law. But one decision was rendered at Special Term; separate orders being entered thereon as to each of said streets.

The charter of the city of Rochester (chapter 755 of the Laws of 1907), so far as its provisions pertain to the controversy here, took effect January 1, 1908. The legislative power of the city is vested in its common council, said body being given express power to require improvements, including paving of public streets and avenues of said city. The common council·is given express authority by section 112

of the charter to provide for and apportion the expense of any public improvement upon the property deemed benefited by such improvement. The charter provides the method of obtaining improvements, by the filing of petitions with the common council, and for the introduction and passage of ordinances to accomplish such improvement. The cost of any improvement which is to be assessed upon the property involved is determined in the first instance by the comptroller, whose duty it is to report the aggregate amount thereof as to each street to the assessors. By section 191 of the charter the assessors, upon receipt of the report of the comptroller as to the expense of the public improvement or work to be assessed upon the property benefited, are charged with the duty of making the assessment upon all the lots and parcels of land within the portion or part of the city directed to be assessed, apportioning the expense upon each lot and parcel of land *according to the benefit,* as nearly as can be ascertained, which it is deemed to have received by the making of such improvement or work.

The first ordinances relating to the improvement of the streets in question were unanimously adopted by the common council of the city of Rochester on March 26, 1912, and provided for the improvement of the five streets mentioned by paving the same with asphalt, unless some other kind of pavement should be designated, pursuant to the provisions of the charter. The whole expense of such improvement as to each street was estimated and assessment therefor provided for upon one tier of lots and parcels of land on each side of the streets to be improved. Thereafter, and on the 1st day of April, 1912, another set of ordinances were adopted concerning said improvement of the five streets, respectively; said ordinances of April 1st containing substantially the same provisions, except that it was therein provided that the whole expense of such improvement of the streets mentioned should be assessed upon one tier of lots and parcels of land on each side of said streets, respectively, and also upon the entire length of Parkside street, from the west end to McKinster street; Vermont street, from Greeley street to Culver road; Rosewood terrace, from Webster avenue to Culver road; Hazelwood terrace, from Webster avenue to Culver road; Melville street, from Webster avenue to Culver road; Parsells avenue, from Webster avenue to Culver road; Grand avenue, from Webster avenue to Culver road; Garson avenue, from Goodman street to Culver road; and Hayward avenue, from Goodman street to the east end thereof. Such assessment is in accordance with the prayer of the petitioners in these proceedings.

These several ordinances, adopted April 1, 1912, thus enlarging the territory to bear the expense of such improvements, were also unanimously adopted, and were referred to the committee on public works to hear complaints thereon. The streets which the common council determined thus to improve were cross streets, running in a substantially northerly and southerly course, whereas Hayward avenue, Garson avenue, Grand avenue, Parsells avenue, Melville street, Hazelwood terrace, Rosewood terrace, and Parkside avenue are main thoroughfares in said city, running in substantially an easterly and westerly course. These thoroughfares have been paved and improved for many

years,.and the contemplated improvements involved in these proceedings were in cross streets, crossing said main thoroughfares at nearly right angles.

. On April 23, 1912, the public works committee, to whom said ordinances of April 1, 1912, had been referred, reported to the common council adversely to the adoption of the assessment plan mentioned in said ordinances as inexpedient, and that in the opinion of said public works committee the adoption of such mode of assessment, compelling the property owners along the intersecting throughfares to bear a portion of the expense of the pavements in said cross streets, would create a precedent at variance with the sentiment expressed by the property owners at a public hearing had. The committee reported that the property owners favored the improvement of the cross streets, but opposed the mode of assessment therefor. In accordance with such report, at its meeting held on May 14, 1912, the common council of said city adopted final ordinances governing the improvement of said streets and providing for the expense thereof, and that such expense should be assessed upon one tier of lots and parcels of land on each side of the streets respectively to be paved. In due time the pavements were constructed and the expense thereof assessed upon the abutting property owners on the paved streets according to the benefits received by the several parcels assessed. The property owners residing on said several streets, feeling aggrieved by such assessment, took proceedings under section 203 of the charter of the city of Rochester to vacate and set. aside the same.

Section 203 of said charter provides as follows:

"If it is alleged that in the proceedings relative to a public improvement or work for which a local assessment is levied, or in the proceedings relative to the levying and making of the assessment therefor, or in any of the proceedings relative to a local assessment, there was *any fraud or substantial error* by reason of which the amount of such assessment is in excess of the amount which ought to have been lawfully levied or assessed upon all the lands in the territory of assessment or any lot or parcel of land therein, or that there was a lack of jurisdiction to levy and assess the whole or any part of said assessment, any party or parties aggrieved thereby may, within sixty days after the confirmation of the assessment roll, present a petition in writing, duly verified, to the Supreme Court at Special Term, or to a judge thereof, or to the County Court of Monroe county or the county judge of Monroe county, asking to have the assessment vacated or reduced, and the court or judge thereupon, upon notice to the corporation counsel, may forthwith proceed to hear the proofs and allegations of the parties or may direct the same to be heard before a referee, or may direct that any issue of fact be tried before a jury. If, after such hearing, it is finally determined that there was fraud or substantial error or lack of jurisdiction as hereinbefore specified, the court may reduce the entire assessment or any part thereof, or may vacate and set aside the entire assessment or any part thereof."

It will be noted that under said section a proceeding will lie to vacate or reduce an assessment only in case of fraud or substantial error. There is no claim of fraud in either of these assessments; the petitioners contending solely that the assessment was erroneous by reason of failure to include the property owners upon the main thoroughfares mentioned in the territory of assessment, that the assessment was not uniform, and that the property assessed was not benefited in propor-

tion to the assessments made. When the local improvement was decided upon, it became the duty of the common council to determine the benefited properties which should bear the expense thereof. Such duty was a purely legislative function, over which, it seems to us, the courts have no control. It was for the common council to determine the parcels to be assessed according to the benefits, and for the assessors to apportion the cost of the improvement among the property owners according to their respective benefits.

It seems to us that the determination of the common council that the cost of such improvement should be borne by the abutting property owners on the streets improved is conclusive, and that the same is not subject to review under the provisions of section 203 above quoted. The courts have uniformly held that the discretion exercised by assessors in spreading the tax for a local improvement is not subject to review by the courts in similar proceedings. Matter of Petition of Laura E. Eager et al. to Vacate Assessments, etc., 46 N. Y. 100; Matter of Petition of Cruger to Vacate Assessment, etc., 84 N. Y. 619. In the case last cited, the charter provision authorizing proceedings to review the assessment for local improvements in the city of New York was very similar to section 203 of the charter of the city of Rochester. Under the New York charter a proceeding could be taken in case "any fraud or substantial error shall be alleged to have been committed," the quoted words being precisely the same as in the Rochester charter. In that case Judge Finch, writing for the court (84 N. Y. at page 622), says:

"They acted upon such knowledge and observation as they had; and such proof as was presented. They had a discretion to exercise in this respect, which we cannot review. The petitioner is in substance asking us to substitute the opinion and judgment of his witnesses as to the area of benefit for that of the officers to whom it was committed by the statute"—citing Matter of Church Street, 49 Barb. 455.

In the cases at bar there is no allegation of fraud, and we do not deem that any substantial error was committed within the provisions of the section of the charter of the city of Rochester authorizing these proceedings. Had some parcel of land been omitted from the assessment within the territory determined to be benefited by the improvements, or if any portion of the property of the petitioners was not in fact benefited by the improvement, the petitioners might allege the commission of a substantial error within the provisions of the section quoted. Such is not the case here. The fixing of the territory of assessment was a legislative act, and not subject to judicial determination or review in these proceedings. Matter of Shaffer, 138 App. Div. 35, 122 N. Y. Supp. 769, affirmed 200 N. Y. 519, 93 N. E. 1132. In obedience to the requirement of the statute, the assessors spread the amount of the expense of the various street improvements upon the parcels of land, according to the benefits derived. It was their duty to determine the amount of such benefits as to each parcel, and in obedience thereto the assessment complained of was made.

The petitioners, upon the trial, produced testimony that certain individual parcels of land were not benefited in proportion to the amount of the assessment thereof. As suggested by the appellant, it is largely

a matter of expert opinion as to the value of the benefits arising from such improvements. In making the assessments the assessors used their best judgment, considering the amount to be raised and the benefits as a whole to the contiguous property affected by such improvements. The exercise of discretion on the part of the assessors should not be upset by the opinion of expert witnesses that the property assessed was not benefited in proportion to the assessment thereof against it. The method of assessment finally adopted by the common council has been in vogue in the city of Rochester since its organization as a municipality, and should not, we think, be supplanted by the new scheme of assessment contended for by the petitioners. While it is difficult to impose any tax in a manner that will be entirely satisfactory to the persons upon whom the burden of payment falls, we are impressed that the scheme of taxation for paving and other local improvements heretofore adopted by the city of Rochester is as just and equitable as could be devised. It certainly would be inequitable and unjust to visit upon the property owners of the intersecting thoroughfares the burden of sharing in the expense of paving these cross streets. When the main thoroughfares were improved and paved, the entire burden of such improvement fell upon the abutting property owners on said streets, and it would be unjust, after having paved their streets, to now ask them to participate in the expense of paving the cross streets upon which their property does not abut. The assessments for these improvements, as finally made, are in strict accordance with similar assessments since the incorporation of the city of Rochester. The petitioners are seeking to overturn such precedent, and for their own especial benefit, as to the paving of these streets, to adopt a system entirely at variance therewith. The people of the city of Rochester are not demanding a change in the method of local improvement assessments, and we do not think that it is within the power of the court to direct that the expense of the paving of these streets be assessed upon a larger area than that determined upon by the common council.

We are therefore of the opinion that the order appealed from in each of these cases should be reversed, and that the findings of the court below in each instance inconsistent herewith should be disapproved, and that new findings should be ordered in accordance with the scheme of local assessment as finally adopted by said common council, and that the appellant recover one bill of costs of this appeal. All concur.