OPINION OF THE COURT
Kenneth R. Fisher, J.
In this taxpayer action brought under General Municipal Law § 51, plaintiffs seek a declaratory judgment invalidating Webster Town Board Resolutions No. 87 and No. 88, the so-called enabling and funding resolutions, respectively. These resolutions authorized the conversion of the Town water districts to Monroe County Water Authority supply (the Village of Webster having been the previous supplier), and authorized the execution of a “[Construction and [r]etail Mease and [o]peration[s]” agreement between the Town, on behalf of its water districts, and the Water Authority. Defendants move to dismiss on the ground that a cause of action is not stated under General Municipal Law § 51. They point to cases holding that, although the statute is phrased in the disjunctive, “a showing of mere illegality is not enough” (Matter of Korn v Gulotta, 72 NY2d 363, 371, 371-372 [1988] [collecting cases]), and that the kind of conduct alleged here, being considerably more benign than the contemptuous conduct in defiance of a Federal court order reviewed in Duffy v Longo (207 AD2d 860 [2d Dept 1994]) which resulted in needless imposition of contempt fines payable out of the city treasury, but which was held outside the reach of the statute, is not cognizable under section 51.
Because both sides have submitted extensive evidence via affidavits and exhibits attached thereto and have thereby charted their course, the motion is considered as one for summary judgment. (See, Kirkpatrick v Diversified Sports, 216 AD2d 892 [4th Dept 1995]; Kulier v Harran Transp. Co., 189 AD2d 803 [2d Dept 1993].) Cross motions for a preliminary injunction were filed by plaintiffs, together with affidavits opposing the motion to dismiss.
Five causes of action are stated: in the first, plaintiffs allege that the resolutions were unlawful because they authorize *605 “non-proportionate” use of water fund monies for the replacement of the Sandbar Water Main when only some Town water districts will be benefitted thereby, and that other districts which contributed to the “water fund” will not be so benefitted. According to plaintiffs, the appropriation and funding resolution obligates all districts on bonds, and expends money contributed by all districts, when the enabling resolution failed to include all Town water districts in the Water Authority conversion. This conduct, plaintiffs say, violates Town Law §§ 202, 202-a, 202-b and 208.[1]
The second cause of action alleges that the enabling and funding resolutions were unlawful by reason of defective public notices. Plaintiffs allege that the notices themselves failed to detail which Town water districts were not then slated for conversion to Water Authority supply, and falsely implied that all Town water districts would be converted. This conduct, according to plaintiffs, violated Town Law § 198 (12) (a) and § 90.[2]
The third cause of action alleges that the contract between the Water Authority and the Town, executed by the Town Supervisor, was unlawful because it deviates from the enabling and funding resolutions; it contains two automatic renewal periods said to be in violation of the 40-year statutory limita- *606 tian of Town Law § 198 (12), and does not bear the signature of a majority of the Town Board as required by Town Law § 198 (11) . The deviation from the resolutions alleged is traced to plaintiffs’ premise that the public notices (which they contend misled residents to believe that all water districts would be connected) control the permissible scope of the actual resolutions passed by the Board, and that the agreement signed by the Supervisor did not slate all districts for conversion. Plaintiffs also contend that the renewal provisions are automatic, despite the notice of cancellation provisions, and therefore exceed the 40-year lease limit of Town Law § 198 (12) .[3]
In the fourth cause of action, plaintiffs allege that the appropriation of the surplus “water fund” and its transfer to the Water Authority was an illegal appropriation and unlawful gift of monies to the Water Authority prohibited by NY Constitution, article VIII, § 1. This cause of action is premised upon two State Comptroller opinions (1978 Opns St Comp No. 78-434 [June 26, 1978]; 1978 Opns St Comp No. 77-720 [Apr. 17, 1978]), one of which addressed Webster’s surplus “water fund” under Town Law § 208. That opinion held that any use of the surplus monies “must be for the general benefit of all the participating districts” (emphasis in original), not “solely for the benefit of one district.” (1978 Opns St Comp No. 78-434 [emphasis supplied].) The fourth cause of action also challenges the appropriation of Town funds in Resolution No. 61 to pay for legal services of the petitioners in two other actions: Matter of Briarwood Bldrs. v Shearer (index No. 97-5912) and Nesbitt & Santoro v Schreiber (index Nos. 98/2076, 2224, 2226-29, 2231-34, 2237, 2238), the latter of which is currently on appeal.[4]
*607 In the fifth cause of action, plaintiffs repeat their claim that the enabling resolution and agreement with the Water Authority is not a bona fide lease, but is instead a sale or gift of the Town water districts’ assets to the Authority without adequate consideration in violation of Town Law § 198 (12) (c), and NY Constitution, article VIII, § 1. Proceeding from the premise that the entire arrangement is a sale, plaintiffs assert that a de facto dissolution of the Town water districts will take place without the authorization of a mandatory referendum for the sale. The length of the term of the agreement, together with the discretion given to the Water Authority to make replacements and improvements at the Authority’s discretion and expense, is said to violate Town Law § 202-b.* ***[5]
DISCUSSION
Resolution of this motion for summary judgment does not require extended discussion. Defendants have met their initial burden to show that the underlying violations of statute *608 claimed by plaintiffs involve statutes which have no application to the arrangement here at issue. Defendants have developed, in the numerous affidavits filed in this and another proceeding, the Kujawa proceeding last year (attached to defendants’ moving papers and reply papers in this action), that the Town Board resolutions and agreement with the Water Authority are fully authorized by Town Law § 198 (12) (b) and § 197-a; that the arrangements are specifically contemplated by Public Authorities Law § 1096 (4); § 1096 (16); and § 1095 (4); that all the Town water districts currently in existence will be benefitted by the conversion, even if not immediately slated for Water Authority conversion; and that the expenditure of the surplus "water fund” for the conversion, and associated legal fees specifically authorized by Town Board resolutions to be paid (see, Murtha v Incorporated Vil. of Is. Park, 202 AD2d 650 [2d Dept 1994] [payment of legal fees pursuant to legislative act not covered by General Municipal Law § 51]), was lawful and in accordance with applicable law. Defendants’ motion is granted.
Plaintiffs’ primary argument concerns the expenditure or appropriation of the surplus monies, consisting of revenues exceeding costs of system maintenance, accumulated from all the Town water districts over an extended period of time, for the over-all conversion, project which will not immediately result in Water Authority supply to every water district from which the surplus revenues were generated. Defendants provided admissible evidence, however, that these surpluses did not in any manner result from the levy of any special assessments or ad valorem taxes. Plaintiffs wholly failed to rebut this allegation of fact with admissible evidence, and therefore the court may treat the matter as having been established. The monies in question, kept in a segregated account, resulted solely from the Town’s retail water sales revenues, over expenses of water district administration and maintenance, since the Town began such retail sales within its water districts over 40 years ago using the Village’s wholesale supply. Plaintiffs do not challenge the right of the Town to receive and keep such surpluses, although they claim the Town should have kept them separate for each contributing water district so that the portion of the fund attributable to each district might be readily identified. Nor have plaintiffs, or anyone else for that matter, ever challenged the rates charged by the Town which resulted in the surpluses.
The effect of these conceded facts is to bring into play the provisions of Town Law § 198 (3) (d) and General Municipal *609 Law § 94. Section 198 (3) (d) of the Town Law provides that “water rates when collected, shall be applied toward the maintenance, operation, enlargement and improvement of the water system and for the payment of the principal and interest of bonds issued for the purposes of such district.” (Emphasis supplied.) Other provisions of the statute make clear that the “water system” referred to in section 198 (3) (d) includes that part of the system of water supply erected, or contracted for, outside district boundaries. (Town Law § 198 [3] [a], [b].) Accordingly, surplus water rents may be applied toward the “improvement of the water system” serving the various districts in the Town, particularly if that “system” serves each of the Town districts as has been the case since the Village began supplying water to them. It is important that section 198 (3) (d), insofar as it addresses the expenditure side of the ledger, is not by its terms water district specific, as is, for example, section 198 (3) (a), which governs construction of facilities to serve the various Town water districts, i.e., the expense side of the ledger. Thus, section 198 (3) (a) provides that the costs of erection and maintenance of the system, wherever it may be located (i.e., either within or without the district as permitted by Town Law § 198 [3] [a]), “shall be district charges to be assessed, levied and collected as provided in [Town Law §§ 202 and 202-a].” The latter two sections provide a detailed and comprehensive scheme, specific to a particular water district, for financing initial construction (Town Law § 202), and maintenance or repair after construction (Town Law § 202-a). Financing of improvements and facility enhancements or “increase” is governed by similar reference to Town Law §§ 202 and 202-a. (See, Town Law § 202-b.)
Nevertheless, the State Comptroller has consistently opined that sections 202 and 202-a of the Town Law are not “mandatory and applicable to the exclusion of any other method” of covering district expenses, such as the authorization contained in Town Law § 198 (3) (d) to use water rents for such purpose. (1989 Opns St Comp No. 89-59, at 132 [Jan. 18, 1990].) According to the Comptroller, section 198 (3) (d) should be construed so as to be harmonized with sections 202 and 202-a of the Town Law, interpreted in a manner not to render it superfluous (McKinney’s Cons Laws of NY, Book 1, Statutes § 144) and be read to permit towns to levy new assessments “only to the extent that such costs are not raised by user charges.” (1989 Opns St Comp No. 89-59, at 133; see also, 1995 Opns St Comp No. 95-17, at 35 [June 28, 1995]; 1988 Opns St Comp No. 88- *610 30, at 56 [June 14, 1988]; 1986 Opns St Comp No. 86-10, at 17 [Feb. 20, 1986]; 1983 Opns St Comp No. 83-16, at 16 [Jan. 25, 1983].) These opinions are firmly grounded in well-established law. (See, e.g., Matter of Wright v Town Bd., 41 AD2d 290, 293 [4th Dept 1973], affd on opn below 33 NY2d 977 [1974], abrogated in part on other grounds Matter of Esler v Walters, 56 NY2d 306 [1982]; Matter of Lane v Town of Oyster Bay, 197 AD2d 690, 691-692 [2d Dept 1993].) In pari materia (McKinney’s Cons Laws of NY, Book 1, Statutes § 221), the provision of Town Law § 202-b must be harmonized with section 198 (3) (d). Contrary to plaintiffs’ contentions, section 202-b by its very terms permits a town board to increase or improve water district facilities “on behalf of two or more districts jointly,” provided that the cost is apportioned pursuant to Town Law §§ 202 and 202-a. (See, Town Law § 202-b [4].) By the reasoning set forth above, and embraced by the Comptroller, surplus water rents of such districts may be expended to defray the costs of such improvements,. and indeed must be used in the first instance to reduce the need for other means of financing referred to in the statute.
Section 198 (3) (d) of the Town Law, however, does not restrict expenditures by the Town Board from surplus water rents to any particular formula. This is in direct contrast with the formula provided in the cited statutory provisions for the making of special assessments or levies. Under sect: on 198 (3) (d), the expenditure of water rents may be system-wide, for the “improvement of the water system” within the Town, and is not restricted to any particular district served by such water system such as the district any particular block of surplus monies originally came from. Plaintiffs’ claims derived from Town Law §§ 202, 202-a and 202-b are, therefore, without merit, as is their claim that section 198 (3) (d) is not an unrestricted authorization to the Town Board to use water rents collected from customers of individual water districts for general “improvement of the water system” which serves the various districts, without reference to any particular formula or allocation.
This interpretation of section 198 (3) (d) is consistent with NY Constitution, article IX, § 1, clause (f) and General Municipal Law § 94. Under these provisions, the right of a municipality which operates a water utility service to use profits therefrom for any lawful purpose is protected, and section 94 of the General Municipal Law clearly permits use of such profits for general municipal purposes. (See, 1991 Opns St Comp No. 91- *611 28, at 84 [July 16, 1991].) If the expenditure of surplus water rents may be made for general municipal purposes, a fortiori it may be made for a purpose related to the utility service in question, either for the direct or indirect benefit of any particular water district. The right of the Town in this regard cannot be abridged, even by statute. (NY Const, art IX, § 1, cl [f].) The only limitation would come from the US Constitution,[6] and no such constitutional challenge, either to the accumulation of the surplus over the years or to its present expenditure, has been made, nor can one likely be made at this time, and in an action such as this one. (See, n 7, infra.)
Even if such a challenge could now be reviewed, the court observes that the portion of the opinion in Giuliani v Hevesi (228 AD2d 348, 351 [1st Dept 1996]) which stated that water user fees “have not withstood constitutional scrutiny when the general revenue uses of the fees were unrelated to the resource being used, so that the ratepayer did not receive the benefit of the fees,” was not embraced by the Court of Appeals in its affirmance. (90 NY2d 27 [1997].) An examination of the cases cited to support the Appellate Division’s observation does not even remotely support the proposition stated, because, like the Court of Appeals ultimate rationale in Giuliani v Hevesi (supra), the only question reviewed was whether the Legislature authorized the transaction in the first instance. The “constitutional” question whether the transaction could be sustained if authorized by the Legislature was never addressed in those cases. (Albany Area Bldrs. Assn. v Town of Guilderland, 74 NY2d 372, 376-379 [invalidation of local law on preemption grounds]; Coconato v Town of Esopus, 152 AD2d 39, 43-44 [3d Dept 1989] [hook-up fee not within scope of Town Law § 198 (3) (d)]; Matter of Torsoe Bros. Constr. Corp. v Board of Trustees, 49 AD2d 461, 464-465 [2d Dept 1975] [the “constitutionality” question only involved whether the local measure conflicted with State statutes as prohibited by the NY Constitution].) To the same effect is Video Aid Corp. v Town of Wallkill (203 AD2d 554, 555 [2d Dept 1994], revd on other grounds 85 NY2d 663 [1995]). Thus no question of a constitutional requirement of correlative benefit in connection with otherwise lawful expenditures of duly collected user revenues *612 existed in these cases, nor was such a question the basis of the ultimate decision in Giuliani v Hevesi (90 NY2d 27, supra).[7]
Of course, the determination here is that indeed the Legislature has authorized defendants to enter into this transaction, and plaintiffs have alleged disproportionate use of the surplus monies to the disadvantage of those who paid water rents in the districts not immediately slated for conversion. And the issue at the pleading stage is whether plaintiffs have a cause of action, not whether they have stated one in so many terms. But even on a constitutional correlative benefit theory— that the water rent “Upayer did not receive the benefit of the fees” (Giuliani v Hevesi, 228 AD2d, supra, at 351, affd on other grounds 90 NY2d 27, supra) — plaintiffs cannot succeed here. The court turns to benefit cases decided on the cost or expenditure side of the ledger. A legislative determination of benefit received in the case of a tax or special assessment cannot lightly be set aside, and the burden to show lack of benefit is on the ratepayer; a fortiori this burden is equally difficult to meet in the water rent or user fee context. In the tax or special benefit context, the Town Board’s determination is an act “legislative in character” and “a matter of legislative policy *613 resting altogether in the discretion of a co-ordinate branch of the government, a policy which the courts cannot legitimately question where it is not inconsistent with the fundamental law of the State.” (Matter of Shaffer, 138 App Div 35, 39 [2d Dept 1910], affd 200 NY 519 [1910].) The Town Board’s determination “ ‘is conclusive and not subject to review by the courts in the absence of a showing of fraudulent or arbitrarily discriminative action by the council.’ ” (Matter of Brewster-Mill Park Realty v Town Bd., 17 AD2d 467, 468 [3d Dept 1962], quoting Matter of Amundson Ave. Sewer, 24 Misc 2d 618, 624.) Even if the area in question will not be serviced, if “there is no reason to suppose that service will not eventually be extended throughout the town” (Matter of Wright v Town Bd., supra, 41 AD2d, at 295), and every reason to conclude, as here, that the conversion “will prove extremely advantageous to the area as a whole” (Matter of Brewster-Mill Park Realty v Town Bd., 17 AD2d, at 468), courts cannot intervene at the behest of a parochial or “a rather narrow and shortsighted approach.” (Supra, 17 AD2d, at 469.) Plaintiffs in actions like this one “may look at these things from too narrow a point of view” because assessments are “not always restricted to the very district [here meaning properties or geographical areas] concerned.” (Matter of Shaffer, 138 App Div 35, 39, 40, supra.) In other words, plaintiffs “cannot separate [themselves] from the community in which [t]he[y] live[].” (Supra, at 40; see also, Matter of City of New York [Juniper Ave.], 233 NY 387, 392 [1922].)
Because there is no case law available which develops the correlative benefit theory of the Appellate Division in Giuliani v Hevesi (supra), the court has borrowed from the benefit analysis applied to imposition of special assessments or ad valorem taxes in the special improvement district financing context, which as set forth above is district specific. The cases described above, admittedly, analyze benefit within the boundaries of the district, not elsewhere. But the court finds that they provide adequate analysis, albeit without the district boundary restriction (because none exists in the statutes governing water rent expenditures), to evaluate the “constitutionality” of user fee expenditures of this kind. Accordingly, plaintiffs state no cause of action even under a correlative benefit theory, if such theory is applicable under Town Law § 198 (3) (d) and General Municipal Law § 94, or by some constitutional penumbra yet to be identified by any court.
Plaintiffs, therefore, cannot succeed in their nonproportionality argument on these facts. Defendants have alleged in af *614 fidavits, again without contradiction, that the Village announced some time ago that development within the Town overtaxed its water supply system, and that the Village imposed user restrictions (e.g., on lawn watering) and a moratorium on further development approvals to the Department of Health. (See, Matter of Briarwood Bldrs. v Shearer, 252 AD2d 944 [4th Dept 1998] [upholding the discretionary nature of the Village’s moratorium decision].) With the threat to development of its tax base, and to unrestricted water usage by Town residents, defendants studied conversion to Water Authority supply and ultimately approved it. Although conversion of the entire Town was desired, and although indeed the enabling resolution expressly slates the entire Town for conversion in phase B over the next three to four years, defendants represent that engineering problems prevent an immediate conversion of all existing water districts. Plaintiffs’ affidavits do not take issue with these representations.
Nevertheless, infusion of Water Authority supplied water will, according to defendants, immediately relieve the stress on the current Village supply system, assure adequate supply for both those areas supplied by the Village and the Water Authority, and thereby alleviate any need for water use restrictions or a moratorium on further development, whether in areas continued to be served by the Village or in the areas served by the Water Authority. Given that the Town and Water Authority represent that they have, on an “on-going” basis, “been working together to identify additional parcels that would receive water from the MCWA” (Kleist affidavit, July 9, 1998 ¶ 16; see also, Thomas affidavit, Mar. 30, 1999 ¶ 7 [“As to those properties which could not be immediately supplied, the MCWA would study to determine whether those properties could be eventually supplied with MCWA water”]; Thomas affidavit, July 9, 1998 ¶ 12 [“we have stated all along that we are attempting to connect as many people as possible to MCWA water”]), these identified benefits to properties not immediately converted are direct, not merely indirect.
For these reasons, there is no colorable basis to declare the actions of the Town Board “palpably arbitrary” (Matter of Brewster-Mill Park Realty v Town Bd., 17 AD2d, supra, at 469), completely without basis, or to find that the conversion, such as it is, “may not by any possibility” benefit each parcel within the Town, either supplied by the Water Authority or now assured an adequate and unrestricted supply by the Village. (Matter of City of New York [Juniper Ave.], 233 NY, supra, *615 at 392; Matter of Wright v Town Bd., supra, 41 AD2d, at 295; compare, Matter of Town Bd. v County of Onondaga, 61 AD2d 1124, 1125 [4th Dept 1978] [“no existing plan for further improvement in the * * * area” and a clear finding that property “was not enhanced” in any manner by the improvement].) If a correlative benefit analysis is required for expenditures made under General Municipal Law § 94 and Town Law § 198 (3) (d) (but see, n 7, supra [and text thereat]), defendants have more than met their burden to show as a matter of law that it has been satisfied. Plaintiffs provide no admissible evidence raising an issue of fact to the contrary. In other words, insofar as plaintiffs raise a proportionality argument in their first, fourth and fifth causes of action, they fail to establish illegality, much less illegality coupled with fraud, collusion, or motivation for personal gain (Stewart v Scheinert, 47 NY2d 826, 827-828 [1979]), or more generally “public injury” which “threatened the public interest” within the meaning of Matter of Korn v Gulotta (72 NY2d 363, 372 [1988], supra).
With respect to the second and third causes of action, it is manifestly clear that the issues of illegality alleged do not rise to the level of fraud, collusion, or motivation for personal gain. Plaintiffs’ attempt to make out a fraud claim by reference to the public notices is, in light of the prior several and widely disseminated announcements of the defendants, spurious at best. The question of the notices was comprehensively treated in Judge Telesca’s decision in Maher v Town of Webster (US Dist Ct, WD NY, Nov. 2, 1998, index No. 98-CV-06296), which rejected the claim of inadequate notice. Although the State law notice issues were not treated within the context of that constitutional due process claim, the discussion therein, together with the exhibits attached to defendants’ affidavits in this case, wholly dispels any claim of fraud or subterfuge. What remaining room plaintiffs have to make out a State law lack of proper notice claim after consideration of these materials could only amount, if at all, to technical noncompliance with the statute, which cannot support a claim under General Municipal Law § 51, and should have been raised in a CPLR article 78 proceeding. (Starburst Realty Corp. v City of New York, 125 AD2d 148, 154 [1st Dept 1987] [“courts have repeatedly held that the law is not a vehicle for correcting technical or procedural irregularities by governmental bodies” (collecting cases)]; supra, 125 AD2d, at 155 [“any question regarding the legality of the procedures utilized by the Board can properly and expeditiously be resolved by means of a CPLR article 78 *616 proceeding”].) The remaining aspects of the second and third causes of action are, by like reasoning, without merit for the reasons stated by defendants, and do not require exegesis.
The balance of the fourth and fifth causes of action, not strictly dealing with a nonproportionality argument, similarly does not state a cause of action. With respect to the fourth, plaintiffs’ reliance on the 1978 Comptroller’s opinions is misplaced. The Comptroller was not faced with a question concerning the arrangement here at issue, and in any event stated no more than that the surplus water revenues could not be used “solely for the benefit of one district.” (1978 Opns St Comp No. 78-434 [emphasis supplied].) As detailed above, the Comptroller’s directive that use of the surplus monies “must be for the general benefit of all the participating districts” (1978 Opns St Comp No. 78-434 [first emphasis supplied; second emphasis in original]) is not a requirement of Town Law § 198 (3) (d) and General Municipal Law § 94, and anyway has been clearly demonstrated by defendants to have been met. (See, above discussion.) Plaintiffs raise no issue of fact to the contrary. Section 208 of the Town Law has no application to this arrangement under Town Law § 198 (12) (b). Plaintiffs’ effort to characterize the lease and operations agreement as a “sale” without adequate consideration completely misses the mark. (Murphy v Erie County, 28 NY2d 80, 88-89 [1971].)
CONCLUSION
For the reasons stated above, defendants’ motion for summary judgment is granted. Judgment in the first, third, fourth and fifth causes of action is in a form which declares the rights of the parties, because the merits have been resolved in this action under General Municipal Law § 51 for a declaratory judgment. (General Signal Corp. v City of Watertown, 254 AD2d 773 [4th Dept 1998].) Judgment in the second cause of action is in the form of a dismissal of the complaint for failure to state a cause of action under General Municipal Law § 51, on the ground that “plaintiffs did not establish that the official acts complained of were corrupt, fraudulent, done in bad faith, or constituted a waste of public property” (Schwep v Town Bd., 243 AD2d 459 [2d Dept 1997]). This is because the merits of the underlying claim concerning the form of public notice have not been reached. The cross motion for a preliminary injunction is denied.
Although not treated in the body of this decision, the opinion by (now Appellate Division) Justice Buckley in Montecalvo v *617 City of Utica (170 Misc 2d 107 [Sup Ct, Oneida County 1996], affd on opn below 233 AD2d 960 [4th Dept 1996]) is especially instructive. As well stated in that case, “[w]hile plaintiffs articulate a broad array of claimed illegalities, alleged irregularities and presumed unwise decisions, this court must conclude that plaintiffs have failed to state a cause of action [with the one exception specified above]. After extensive review of the hundreds of pages of pleadings, affidavits, exhibits and memoranda submitted on this motion, it is abundantly clear that plaintiffs are attempting to substitute their own judgment for that of elected officials at the local, county and State levels regarding the ultimate wisdom of the * * * transfer of [the] water system to a regional authority.” (Supra, 170 Misc 2d, at 114-115.)
Plaintiffs seek leave to replead in their last filed affidavits, but they provide no clue of what a repleading might entail. Although the court must freely grant leave to replead in an appropriate case (CPLR 3025), the failure to include the proposed amendments in plaintiffs’ request for leave is fatal to their request. (Loehner v Simons, 224 AD2d 591 [2d Dept 1996].) Where the proposed amended pleading is not attached to the request to replead, there must at least be a specification of what new theories or facts supporting recovery will be included in an amended pleading (Walker v Pepsico, Inc., 248 AD2d 1015 [4th Dept 1998]), so that a court might have a chance to exercise its discretion by weighing the several factors which are relevant to such a motion. (Branch v Abraham & Strauss Dept. Store, 220 AD2d 474, 475 [2d Dept 1995].) That is impossible on the present record. Plaintiffs simply request that the court consider the information in their last filed affidavits on the issue of whether to permit an amended pleading, without further specification. The court has indeed considered the information contained in those affidavits in connection with the motion for summary judgment disposed of above. In addition, there is much force to what defense counsel says in his affidavit opposing the application to replead, which contends that at every stage of the process since the Kujawa suit was first filed, plaintiffs’ many requests to replead, including this one, were never accompanied by an explanation why the information proposed for the amended pleading could not have been a part of the original pleadings. Accordingly, leave to replead is denied.

. Defendants contend that the first cause of action is premised on demonstrable misstatements of fact. According to defendants, there are separate “water funds” maintained by the Town on behalf of its districts. The first, called the “Individual District Fund,” contains approximately $64,000 and has not been touched by defendants, and is not slated for use in connection with the conversion. The second, called the “Water Fund,” was generated by surplus revenues over expenditures since the Town began to sell water at retail to Town customers over 40 years ago (using the Village supply). Defendants have alleged without contradiction that no ad valorem taxes, or other special assessments, were put into the surplus “water fund.” Giving the complaint a liberal reading, as the court must at this stage, it refers to the surplus water fund, not the $64,000 fund.

. Defendants contend principally that no public hearing was required, and that defendants actually proceeded under Town Law § 198 (12) (b), not (a). The decision to hold a hearing, defendants say, was a policy one, not a legal one. In any event, defendants maintain that the public notices were legally sufficient, in that they incorporated maps available for inspection prior to, and during, the public hearing, which clearly demarcated those districts not then currently slated for conversion. Defendants point to several other press releases, newspaper columns, and correspondence in advance of the public hearing which were widely disseminated and made explicitly clear that not all Town water districts would be converted immediately, some of which plaintiffs conceded knowledge of prior to the public hearing. Á Federal civil rights action under 42 USC § 1983, challenging the notices on constitutional grounds, was dismissed in Federal District Court last year on the merits.

. Defendants respond that the contract at issue was executed by the Supervisor on behalf of the Town Board pursuant to, and permitted by, Town Law § 198 (12) (b), not (11). Defendants rely on the cancellation provisions of section 10.3 of the contract to keep it within the 40-year statutory period, and they contend that the contract tracked the maps incorporated into the notices on file in the Town Clerk’s office in advance of the hearing, and on display at the hearing.

. Defendants contend in response that these and other lawsuits initiated by the Village or its supporters required that the Town hire competent and experienced counsel to respond to them, and to develop an over-all legal strategy to facilitate the decision to convert the Town’s water supply in spite of the determined and concerted opposition of the Village and its allies; that duly enacted Town Board resolutions authorized the retainers (e.g., Resolution No. 61); that a member of the Town Board may file objections to a petition for permissive referendum and initiate a proceeding to invalidate pursu *607 ant to Town Law § 91 (Matter of Cohalan, 71 Misc 2d 196 [Sup Ct, Suffolk County 1972], affd sub nom. Matter of Cohalan v Olmo, 41 AD2d 840 [2d Dept 1973]; Matter of Village of Haverstraw, 144 Misc 37 [Sup Ct, Rockland County 1932]; 9 Opns St Comp, 1953, at 318); that Nesbitt received authorization from the Board to proceed and Resolution No. 61 authorized him to retain counsel to represent him then; that subsequent resolutions approved the legal fees incurred after billings were made; that no fees were incurred or paid by the Town in connection with the Briarwood suit; that the appropriation of the surplus “water fund” for payment to the Authority benefits all water districts, even those not immediately slated for conversion; and that section 208 of the Town Law, relied on by the Comptroller, does not delimit the scope of a retail lease and operation agreement entered into on behalf of the water districts pursuant to section 198 (12) (b), an arrangement not presented to the Comptroller or considered by him in the opinions cited.

. Defendants respond that the lease and operations agreement is fully authorized by Town Law § 198 (12) (b) and that courts have held that similar 40-year arrangements have been held not to violate the gift of public property provisions of the NY Constitution. (Murphy v Erie County, 34 AD2d 295 [4th Dept 1970], affd, 28 NY2d 80 [1971].) Defendants point out that the Water Authority is obligated to replace and upgrade the Town’s water system at its own expense and to maintain the system at its own expense for 40 years, no small task given the age of much of the system and its size. According to the affidavits provided by the Water Authority, it must undertake under the agreement to make improvements, replacements and construction totaling an estimated $5.5 million, only $2.1 million of which the Town will be required to pay or become obligated on. For the several reasons articulated by Water Authority Finance Director Herbert Crabb in his July 9, 1998 affidavit, defendants contend that “[t]he Town is not giving money away; it is buying services from the Water Authority” (¶ 19), and that this is, together with the equitable allocation of cost and ownership rights set forth in the agreement, authorized by Town Law § 198 (12) (b) and § 197-a.

. Cf., Center for Auto Safety v Athey, 37 F3d 139, 142-143 (4th Cir 1994) (standards for user fee infringement on Commerce Clause).

. It must be emphasized that no one ever challenged the rates set by the Town under the “fair return” provision of General Municipal Law § 94, or otherwise, in an appropriate proceeding, and therefore the accumulation of the surplus now appears to be beyond review. (Heritage Co. v Village of Massena, 192 AD2d 1039, 1041 [3d Dept 1993].) Because the revenues do not constitute a tax or special assessment (cf., Matter of L.P.A. Assocs. v Daby, 231 AD2d 827, 828-829 [3d Dept 1996]; Matter of Crandall Pub. Lib. v City of Glens Falls, 216 AD2d 814, 815 [3d Dept 1995]; Real Property Tax Law § 102 [14], [15], [20]), and because the relevant statutes, Town Law § 198 (3) (d) and General Municipal Law § 94, permit expenditure thereof for general Town purposes quite apart from individual water district boundaries, plaintiffs proportionality argument is inapposite. Nevertheless, if a nonstatutory requirement exists that “the general revenue uses of the fees * * * [be] [ ]related to the resource being used” that generated the fees, as the Appellate Division suggested in dicta not adopted by the Court of Appeals (Giuliani v Hevesi, 228 AD2d, supra at 351), defendants have, for the reasons stated in the text below, clearly shown a sufficient relationship to meet such a nonstatutory or Judge-made rule, even with respect to those property owners who will not immediately be converted to Water Authority supply. It would be quite novel for this court, in the first instance, to apply a Judge-made rule, contained so far as I can tell from my own research only in a dictum not supported by the case law cited and seemingly eschewed by the Court of Appeals, and further to hold that such a correlative benefit theory must be confined to water district borders on the basis of some unstated criteria at odds with the governing statute, General Municipal Law § 94. It is not for the court arbitrarily to set “constitutional” criteria on its own in the absence of legislative guidance or clear constitutional command, neither of which has been called to the attention of the court.